APPEAL,TYPE–E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:22–cv–02292–CKK</u>
### *Internal Use Only*

| | |
|---|---|
| UNITED STATES OF AMERICA v. NAVARRO | Date Filed: 08/03/2022 |
| Assigned to: Judge Colleen Kollar–Kotelly | Jury Demand: None |
| Cause: 44:2107 Presidential Recordings and Materials Act | Nature of Suit: 890 Other Statutory Actions |
| | Jurisdiction: U.S. Government Plaintiff |

**<u>Plaintiff</u>**

**UNITED STATES OF AMERICA**    represented by    **Elizabeth J. Shapiro**
*By the U.S. Department of Justice*

U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
(202) 514–5302
Fax: (202) 616–8470
Email: <u>Elizabeth.Shapiro@usdoj.gov</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Clifford Lee Reeves , II**
DOJ–CIV
Civil Division, Federal Programs Branch
100 L Street, NW
Washington, DC 20005
202–616–0773
Email: <u>lee.reeves2@usdoj.gov</u>
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**PETER K. NAVARRO**    represented by    **Stanley Edmund Woodward , Jr.**
BRAND WOODWARD LAW
1808 Park Road NW
Washington, DC 20010
202–996–7447
Fax: 202–996–0113
Email: <u>stanley@brandwoodwardlaw.com</u>
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stanley McKennett Brand**
BRAND WOODWARD LAW
3 Pebble Ridge Court

1

Rockville, MD 20854
202–258–6597
Email: stanleymbrand@gmail.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/03/2022 | 1 | COMPLAINT against PETER K. NAVARRO (Fee Status:Filing Fee Waived) filed by UNITED STATES OF AMERICA. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5)(Reeves, Clifford) (Entered: 08/03/2022) |
| 08/03/2022 | 2 | REQUEST FOR SUMMONS TO ISSUE re 1 Complaint, filed by UNITED STATES OF AMERICA. Related document: 1 Complaint, filed by UNITED STATES OF AMERICA.(Reeves, Clifford) (Entered: 08/03/2022) |
| 08/03/2022 | 3 | NOTICE of Appearance by Elizabeth J. Shapiro on behalf of UNITED STATES OF AMERICA (Shapiro, Elizabeth) (Entered: 08/03/2022) |
| 08/03/2022 | | Case Assigned to Judge Colleen Kollar–Kotelly. (znmg) (Entered: 08/03/2022) |
| 08/03/2022 | 4 | SUMMONS (1) Issued Electronically as to PETER K. NAVARRO. (Attachment: # 1 Notice and Consent)(znmg) (Entered: 08/03/2022) |
| 08/04/2022 | 5 | ORDER ESTABLISHING PROCEDURES FOR CASES ASSIGNED TO JUDGE COLLEEN KOLLAR–KOTELLY. Signed by Judge Colleen Kollar–Kotelly on 08/04/2022. (DM) (Entered: 08/04/2022) |
| 08/10/2022 | 6 | WAIVER OF SERVICE. PETER K. NAVARRO waiver sent on 8/9/2022, answer due 10/8/2022. (Reeves, Clifford) (Entered: 08/10/2022) |
| 09/26/2022 | 7 | MOTION for Summary Judgment by UNITED STATES OF AMERICA. (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Reeves, Clifford) (Entered: 09/26/2022) |
| 09/27/2022 | | MINUTE ORDER: The Court is in receipt of Plaintiff's 7 Motion for Summary Judgment. Although the Court notes that Plaintiff's Motion is technically timely pursuant to Federal Rule of Civil Procedure 56(b), the Court must stress that Plaintiff has moved for summary judgment before Defendant has filed an answer or otherwise responded to Plaintiff's complaint. Consistent with the longstanding practice of this jurisdiction, the Court shall defer consideration of any motion for summary judgment until after the filing of Defendant's answer. *See, e.g., First Am. Bank, N.A. v. United Equity, Corp.*, 89 F.R.D. 81, 87 (D.D.C. 1981) (Sirica, J.); *see also* Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2717 (West 2022) (noting common practice of deferring consideration of motion for summary judgment filed early in course of litigation). The 7 Motion for Summary Judgment is therefore **HELD IN ABEYANCE** pending Defendant's response to Plaintiff's complaint and further order of the Court. Defendant shall not file an opposition to the 7 Motion until after the Court sets a briefing schedule for the 7 Motion. Additionally, this minute order should not be construed to bar a motion for preliminary relief pursuant to Federal Rule of Civil Procedure 65. Signed by Judge Colleen Kollar–Kotelly on September 27, 2022. (lcckk1) (Entered: 09/27/2022) |
| 10/11/2022 | 8 | NOTICE of Appearance by Stanley Edmund Woodward, Jr on behalf of PETER K. NAVARRO (Woodward, Stanley) (Entered: 10/11/2022) |

| 10/11/2022 | 9 | MOTION to Dismiss by PETER K. NAVARRO. (Attachments: # 1 Text of Proposed Order)(Woodward, Stanley) (Entered: 10/11/2022) |
|---|---|---|
| 10/12/2022 | | MINUTE ORDER: The Court is in receipt of Defendant's 9 Motion to Dismiss. Upon review thereof, it appears that the disputes between the parties are purely legal in nature. As such, the Court sets the following briefing schedule. Defendant shall file a separate opposition to the Government's 7 Motion for Summary Judgment on or before **October 21, 2022**. The Government shall file a combined opposition to Defendant's 9 Motion and a reply in support of its 7 Motion for Summary Judgment on or before **November 4, 2022**. Finally, Defendant shall file his reply in support of his 9 Motion on or before **November 11, 2022**. Signed by Judge Colleen Kollar–Kotelly on October 12, 2022. (lcckk1) (Entered: 10/12/2022) |
| 10/12/2022 | | Set/Reset Deadlines: Plaintiff's opposition to 9 due by 11/4/2022. Defendant's Reply to 9 due by 11/11/2022. Defendant's opposition to 7 Motion for Summary Judgment due by 10/21/2022. Plaintiff's Reply to 7 Motion for Summary Judgment due by 11/4/2022. (dot) (Entered: 10/12/2022) |
| 10/21/2022 | 10 | NOTICE of Appearance by Stanley McKennett Brand on behalf of PETER K. NAVARRO (Brand, Stanley) (Entered: 10/21/2022) |
| 10/21/2022 | 11 | Memorandum in opposition to re 7 Motion for Summary Judgment filed by PETER K. NAVARRO. (Attachments: # 1 Statement of Facts, # 2 Exhibit A)(Woodward, Stanley) (Entered: 10/21/2022) |
| 11/04/2022 | 12 | REPLY to opposition to motion re 7 MOTION for Summary Judgment filed by UNITED STATES OF AMERICA. (Reeves, Clifford) (Entered: 11/04/2022) |
| 11/04/2022 | 13 | Memorandum in opposition to re 9 Motion to Dismiss filed by UNITED STATES OF AMERICA. (Reeves, Clifford) (Entered: 11/04/2022) |
| 11/14/2022 | 14 | REPLY to opposition to motion re 9 MOTION to Dismiss filed by PETER K. NAVARRO. (Woodward, Stanley) (Entered: 11/14/2022) |
| 03/09/2023 | 15 | ORDER granting 7 Motion for Summary Judgment, denying 9 Motion to Dismiss, and entering judgment in favor of Plaintiff. Further action required. See Order for details. Signed by Judge Colleen Kollar–Kotelly on March 9, 2023. (lcckk1) (Entered: 03/09/2023) |
| 03/09/2023 | 16 | MEMORANDUM OPINION re 12 Order. Signed by Judge Colleen Kollar–Kotelly on March 9, 2023. (lcckk1) (Entered: 03/09/2023) |
| 03/22/2023 | 17 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 15 Order on Motion for Summary Judgment, 16 Memorandum & Opinion by PETER K. NAVARRO. Filing fee $ 505, receipt number ADCDC–9946899. Fee Status: Fee Paid. Parties have been notified. (Woodward, Stanley) (Entered: 03/22/2023) |
| 03/22/2023 | 18 | MOTION to Stay re 15 Order on Motion for Summary Judgment by PETER K. NAVARRO. (Attachments: # 1 Text of Proposed Order)(Woodward, Stanley) (Entered: 03/22/2023) |
| 03/23/2023 | | MINUTE ORDER: The Court is in receipt of Defendant's 18 Motion for Stay Pending Appeal, filed March 22, 2023. Plaintiff shall file its opposition on or before **March 25, 2023 at 10:00 AM ET**, and Defendant shall file his reply on or before **March 26, 2023 at 5:00 PM ET**. The Court briefly notes that, on March 9, 2023, it ordered Defendant to comply with the Court's order to produce a category of documents "forthwith." |

"Forthwith" means "immediately; without delay." *Forthwith*, Black's Law Dictionary (9th ed. 2009). It would appear that Defendant did not comply with that portion of the order to produce some documents forthwith prior to filing for a stay. Signed by Judge Colleen Kollar–Kotelly on March 23, 2023. (lcckk1) (Entered: 03/23/2023)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 1:22-cv-02292-CKK** |
| **v.** ) | |
| ) | |
| **PETER K. NAVARRO,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>NOTICE OF APPEAL</u>

Dr. Peter K. Navarro appeals to the United States Court of Appeals for the District of Columbia Circuit from the final order denying his motion to dismiss entered on March 10, 2023.

Dated: March 22, 2023

Respectfully submitted,

_/s/ Stan M. Brand_
Stanley E. Woodward, Jr. (D.C. Bar No. 997320)
Stan M. Brand (D.C. Bar No. 213082)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

_Counsel for Defendant Peter K. Navarro_

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>          Plaintiff,<br><br>          v.<br><br>PETER K. NAVARRO,<br>          Defendant. | Civil Action No. 22-2292 (CKK) |

## ORDER AND JUDGMENT
(March 9, 2023)

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that Defendant's [9] Motion to Dismiss is **DENIED**.  It is further

**ORDERED**, that Plaintiff's [7] Motion for Summary Judgment is **GRANTED**.  It is further

**ORDERED**, that Defendant shall produce to Plaintiff the 200 to 250 documents that his counsel has identified as Presidential records **forthwith**.  It is further

**ORDERED**, that, on or before **thirty days** after the entry of this Order, the parties shall MEET AND CONFER to discuss the search terms and methodology used, or to be used, to unequivocally identify Presidential records in Defendant's possession. If the parties reach agreement on the search terms and methodology, their implementation to identify records should thereafter proceed, and all Presidential records identified thereby shall be expeditiously produced.  Once the records search and production have been completed, Plaintiff shall file a notice indicating that the judgment entered herein has been satisfied.  If, however, the parties fail to reach agreement on search terms and methodology, the parties shall, no later than **seven days** after their meet-and-confer, file a joint status report explaining how they intend the Court to enforce the judgment entered herein.

          **SO ORDERED**.

Date:  March 9, 2023

                              /s/
                              COLLEEN KOLLAR-KOTELLY
                              United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br><br>        v.<br><br>PETER K. NAVARRO,<br>        Defendant. | Civil Action No. 22-2292 (CKK) |

**MEMORANDUM OPINION**
(March 9, 2023)

The United States has sued Defendant Peter K. Navarro ("Defendant" or "Dr. Navarro"),

formerly Deputy Assistant to then-President Donald J. Trump, for the return of public records

belonging to the United States. The Court agrees with the United States that there can be no dispute

of material fact that Navarro retains such records, nor any legal dispute that the District of

Columbia replevin statute, D.C. Code § 16-3702, provides a cause of action for their return.

Accordingly, upon consideration of the briefing,[1] the relevant legal authorities, and the entire

record, the Court **GRANTS** the United States' [7] Motion for Summary Judgment and **DENIES**

---

[1] The Court mainly considered:

- Plaintiff's Memorandum in Support of Motion for Summary Judgment ("MSJ"), ECF No. 7-1;
- Defendant's Motion to Dismiss ("MTD"), ECF No. 9;
- Defendant's Opposition to the United States' Motion for Summary Judgment ("MSJ Opp."), ECF No. 11;
- Plaintiff's Combined Reply in Support of Motion for Summary Judgment & Opposition to Defendant's Motion to Dismiss ("MTD Opp."), ECF No. 12;
- Defendant's Reply in Support of Motion to Dismiss ("MTD Repl."), ECF No. 14; and
- Plaintiff's Statement of Undisputed Material Facts ("SMF"), ECF No. 7-2,

In an exercise of its discretion, the Court has concluded that oral argument would not assist in the
resolution of this matter.

Defendant's [9] Motion to Dismiss.  The Court further fashions injunctive relief that requires immediate compliance that the Court will oversee.

## I.     BACKGROUND

### A.  Factual and Procedural Background

This matter arises under the Presidential Records Act ("PRA") of 1978, 44 U.S.C. §§ 2201-2209, and the District of Columbia replevin statute, D.C. Code § 16–3702. The United States initiated suit against Defendant Peter K. Navarro seeking the return of certain emails created and/or received by him in a personal, encrypted email account that that he used in connection with his duties as a federal employee and adviser to the President of the United States.  Dr. Navarro was employed by the White House in the Executive Office of the President from January 20, 2017 until January 20, 2021. He was Deputy Assistant to the President and Director of the National Trade Council from his hiring until April 29, 2017, when he was appointed Assistant to the President and Director of the Office of Trade and Manufacturing Policy.  In addition to those responsibilities, in March 2020, then-President Trump appointed Dr. Navarro to coordinate the government's use of the Defense Production Act, 50 U.S.C. § 4501 et seq., to respond to the COVID-19 pandemic. SMF ¶¶ 1-5.

Under the PRA, a Presidential record is a record generated or received by a covered employee[2] in the course of assisting with the discharge of the President's official duties. *See* 44 U.S.C. § 2201(2).  Among other responsibilities, a covered employee must copy any Presidential record sent on a "non-official electronic message account" to his official government email

---

[2] For purposes of section 2209, "covered employee" means the immediate staff of the President or the Vice President, "a unit or individual of the Executive Office of the President whose function is to advise and assist the President," or "a unit or individual in the Office of the Vice President whose function is to advise and assist the Vice President." 44 U.S.C. § 2209(c)(1).

account within 20 days, and to otherwise transfer Presidential records received on a non-official account to the National Archives and Records Administration ("NARA") at the end of each presidential administration. *See id.* § 2209*; id.* §§ 2202-03. At the end of a Presidential administration, pursuant to the PRA, the Archivist of the United States is required to "assume responsibility for the custody, control, and preservation" of Presidential records and to "make such records available to the public as rapidly and completely as possible consistent with the provisions of this chapter." *Id.* § 2203. The PRA differentiates "Presidential records" from "personal records," defining "personal records" as "all documentary materials, or any reasonably segregable portion thereof, of a purely private or nonpublic character which do not relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." *Id.* § 2201 (3).

It is undisputed that Dr. Navarro was a covered employee under the statute. SMF ¶ 6. Therefore, under the PRA, the United States "retain[s] complete ownership, possession, and control of Presidential records" generated or received by him in the course of assisting with the discharge of the President's official duties. *See* 44 U.S.C. §§ 2201(2), 2202.

There is no issue with regard to Dr. Navarro's official email accounts. However, while serving in the White House, Dr. Navarro used at least one non-official email account—an account hosted by the encrypted email service Proton Mail—to send and receive messages constituting Presidential records. SMF ¶ 14. E-mail and other electronic messages, including electronic messages sent and received on non-official electronic message accounts, constitute Presidential records to the same extent as hard copy documents. 44 U.S.C. §§ 2201, 2209. The PRA is explicit with regard to Presidential records generated by non-official electronic accounts: It requires the President, the Vice President, and Covered Employees to "cop[y] their official electronic

3

messaging account" when sending a communication using a non-official account or to "forward[]
a complete copy" of an email sent on their non-official account to their "official electronic
messaging account . . . not later than 20 days after the original creation or transmission" of the
record. *Id.* § 2209(a)(1)-(2).

In February 2017, the White House Counsel's Office issued a memorandum to White
House personnel regarding the use of non-official email accounts to conduct official business,
which outlined the obligations of White House personnel under the PRA. The memorandum read,
in part: "If you ever send or receive email that qualifies as a [P]residential record using any other
account [*i.e.,* other than the official government account], you must preserve that email by copying
it to your official EOP email account or by forwarding it to your official email account within
twenty (20) days." SMF, ¶ 6; Compl. Ex. 1 at 2, ECF 1-2 (Memorandum for All Personnel, from
Deputy White House Counsel Stefan C. Passantino, through Counsel to the President Donald F.
McGahn (Feb. 22, 2017) ("WHCO Memorandum")).  The memorandum also confirmed "that
[P]residential records are the property of the United States . . . When you leave EOP employment,
you may not take any presidential records with you." *Id.* at 2.

Dr. Navarro did not copy each email or message constituting Presidential records that was
sent or received on his non-official account to his official government email account; he retained
at least some of them in his personal email account.  SMF ¶ 15. Moreover, when NARA learned
of the personal account and requested that Dr. Navarro provide it with such Presidential records as
he retained in his personal email account, Dr. Navarro ignored NARA's repeated requests.  With
no response to NARA's entreaties, the Department of Justice wrote him to request return of the
records and advise him that failing such provision, suit would be brought against him.  Only at that
juncture did he even engage with the Department of Justice with regard to his email account.

4

On June 16, 2022, counsel for Dr. Navarro contacted the Department of Justice and represented that they had retained a document review and analysis firm to aid them in evaluating the extent to which Dr. Navarro had PRA records in his possession, custody, or control.  Compl. Ex. 4 at 1, ECF No. 1-5, Declaration of William J. Bosanko ("Bosanko Decl.") ¶ 8. Over the next several weeks, Dr. Navarro's counsel provided periodic updates on the status of their search and analysis process. In order to assist and expedite the search, on July 18, 2022, NARA's General Counsel provided Dr. Navarro's counsel with a list of search terms. NARA requested that Dr. Navarro prioritize the return of any PRA records responsive to those search terms.

By email dated July 22, 2022, Dr. Navarro's counsel represented that their application of the search parameters that NARA provided had generated over 1,700 documents. Thereafter, on July 25, 2022, Dr. Navarro's counsel estimated that, based on their review of these documents, between 200 and 250 of these 1,700 documents were PRA records.  Bosanko Decl. ¶ 9.  By letter dated July 29, 2022, Dr. Navarro's counsel refused to produce any PRA records to NARA absent a grant of immunity for the act of returning such records.  Bosanko Decl. ¶ 9.  This lawsuit was filed thereafter.

In brief, as detailed above, the United States' Complaint asserts that by virtue of his employment Dr. Navarro fell under the PRA, and that his personal email contains Presidential records that he has refused to provide. The Complaint contains two alternative claims for relief, first under the D.C. replevin statute, pursuant to Fed. R. Civ. P. 64, and, alternatively, under federal common law of replevin. Compl., ECF No. 1, ¶¶ 39-50. Both claims seek the return of Presidential records that belong to the United States and that have been

wrongfully detained by Dr. Navarro. *Id.*

### B.  Material Facts Not in Dispute

Pursuant to LCvR 7(h), each party submitting a motion for summary judgment must attach a statement of material facts to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement. The party opposing such a motion must, in turn, provide "specific facts showing that there is a genuine issue for trial." *Id.* Where the opposing party fails to provide specific relevant facts in dispute, discharge this obligation, the Court may take all facts alleged by the movant as admitted. *Id.*

The Government's Statement of Material Facts Not in Dispute, ECF No. 7-2, contained sixteen proposed factual statements. Dr. Navarro expressly does not dispute twelve. *See* Def.'s Resp. to the Government's Statement of Undisputed Material Facts ¶¶ 1-8, 10, 12-14, ECF No. 11-1 ("SMF Resp.").

The Court will proceed to analyze the four disputed statements to determine whether they adduce "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587.

1.  SMF No. 9 states:

"E-mail and other electronic messages, including electronic messages sent and received on non-official electronic message accounts, constitute Presidential records to the same extent as hard copy documents. 44 U.S.C. §§ 2201, 2209."

Dr. Navarro responded: "Disputed only to the extent that the statute is vague as to how and to what extent it applies to email records, which is discussed in Dr. Navarro's opposition. Dr. Navarro does not dispute, however, that e-mail and other electronic messages can constitute Presidential records." SMF Resp. at 3-4.

6

Dr. Navarro does not take issue with the core factual statement that "e-mail and other electronic messages can constitute Presidential records." His "dispute" seems to reduce to a general legal objection to the statute's specificity. Therefore, the core statement must be considered undisputed.

2. SMF No. 11 states:

"In February 2017, the White House Counsel's Office issued a memorandum to White House personnel regarding the use of non-official email accounts to conduct official business, writing: "If you ever send or receive email that qualifies as a presidential record using any other account [i.e., other than the official government account], you must preserve that email by copying it to your official EOP email account or by forwarding it to your official email account within twenty (20) days." Compl. Ex. 1 at 2, ECF No. 1-2 (Memorandum for All Personnel, from Deputy White House Counsel Stefan C. Passantino, through Counsel to the President Donald F. McGahn (Feb. 22, 2017)) (WHCO Memorandum))."

Dr. Navarro responded: "Disputed only to the extent that the memorandum interprets the law more broadly than the language of 44 U.S.C. 2209(a) in that it states that emails which are received must be forwarded to a government account."  SMF Resp. at 4.

Dr. Navarro again tenders a legal objection. He disputes only that the direction he received is, in his view, broader than the statute. He does not dispute that the memorandum, as quoted, was issued. This fact of its issuance and receipt, as quoted, must also be considered as undisputed.

3. SMF No. 15 states:

"Defendant did not copy each email or message constituting Presidential records that was sent or received on his non-official account or accounts to his official government email account. Bosanko Decl. ¶ 5."

Dr. Navarro responded: "Disputed in that the statute is vague as to whether the receipt of emails on a personal account creates a Presidential record and/or whether and to what extent the emails received on Dr. Navarro's email account were ever Presidential records. An audit is ongoing to determine the emails responsive to NARA's correspondence." SMF Resp. at 6.

Dr. Navarro does not respond in any substantive way to the Plaintiff's statement. Indeed, he does not deny the asserted fact. Rather, he objects to whether the statute can or does classify the records in his personal email account, and then evades the question by adverting to an audit that was partially completed but apparently still ongoing. Absent a denial of the stated fact, the Court must consider the fact undisputed.

4.   SMF No. 16 states:

"Defendant continues to have Presidential records in his possession, custody, and/or control. Bosanko Decl. ¶¶ 6-10 & Attachment A (July 29, 2022 letter from John S. Irving to Gary M. Stern) (acknowledging continued possession, custody, and/or control)."

Dr. Navarro responded: "Disputed in that the audit of Dr. Navarro's email is ongoing, so the extent of whether or what Presidential records are in his possession, custody, and/or control is unknown at this time." SMF Resp. at 6.

The Court again notes that this is not a denial of the stated fact, but an evasion. Dr. Navarro merely contends that because of the ongoing audit, notwithstanding the results of its initial search, he cannot say whether or what Presidential records are in his possession, custody and/or control. Nonetheless in view of the entire record, it is quite clear that this is an effort artificially to create a dispute where there is no factual basis for one. The Court considers the admission of Dr. Navarro's counsel, that 200 to 250 emails constituting Presidential records were discovered out of 1,700 potentially responsive documents in the initial email search, as evidencing the fact that Dr. Navarro

8

has Presidential emails in his possession.[3]  Bosanko Decl. ¶ 9, ECF No. 1-5.

Therefore, notwithstanding the efforts to create disputed facts and avoid the consideration of summary judgment, the Court considers the facts to be undisputed, as discussed above.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

The Court may grant summary judgment where, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009).  Under the summary judgment standard, the moving party bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In response, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal citations omitted).

"Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

---

[3] Statements and arguments by Dr. Navarro's counsel make plain, beyond his counsel's explicit admission, that his personal emails contain records responsive to the requests by NARA and by the Department of Justice, but that they are withheld for other reasons. *See, e.g.,* MTD at 6 ("Dr. Navarro has asserted a privilege validly delaying the time within which he must produce *the records sought by the Archivist*" (emphasis added)).

9

586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### B. Motion to Dismiss for Failure to State a Claim

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is "appropriate when a complaint fails 'to state a claim upon which relief can be granted.'" *Strumsky v. Wash. Post Co*., 842 F. Supp. 2d 215, 217 (D.D.C. 2012) (quoting Fed. R. Civ. P.12(b)(6)). "[A] complaint must contain sufficient factual allegations that, if accepted as true, 'state a claim to relief that is plausible on its face.'" *United States ex rel. Scott v. Pac. Architects & Eng'rs, Inc.*, 270 F. Supp. 3d 146, 152 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

### III.    DISCUSSION

### A. Presidential Records Act

#### 1.  PRA's Requirements

In opposing summary judgment and moving to dismiss, Dr. Navarro argues that the PRA does not impose an express statutory obligation on him to return Presidential records that he

created or received during his tenure as a Presidential advisor, and that the PRA does not contain its own enforcement mechanism, therefore precluding the writ of replevin sought by the United States.  *See* MSJ Opp. at 4-5; MTD at 7.  Dr. Navarro further argues that the PRA lacks any statutory deadline by which he must turn over any Presidential records in his possession, and therefore the Government has no legal recourse. MSJ Opp. at 5; MTD at 5.  These arguments ignore or contravene the statute's purpose, framework and provisions.

Dr. Navarro contends that he has no statutory duties under the PRA, *see* MSJ Opp. at 5. This position would defeat the entire purpose of the statute, *i.e.*, to ensure that Presidential records, as defined, are collected, maintained and made available to the public. 44 U.S.C. §§ 2201-2203. The PRA makes plain that Presidential advisors such as Dr. Navarro are part and parcel of the statutory scheme in that they are required to preserve Presidential records during their tenure so that they can be transferred to NARA at the end of an administration. *See* 44 U.S.C. § 2203(g)(1) ("Upon the conclusion of a President's term in office . . . the Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President.").  Dr. Navarro was so advised when he began his employment.[4]

The PRA, in fact, provides that covered employees such as Dr. Navarro "may not create or send a Presidential . . . record using a non-official electronic message account unless the President,

---

[4] A White House Counsel memorandum sent early in Dr. Navarro's tenure expressly extended section 2209(a)'s requirement to copy or forward emails to apply to those emails received on a non-official email account. *See* Compl. Ex. 1 at 2, ECF No. 1-2 (instructing White House personnel that "[i]f you ever send or receive email that qualifies as a presidential record using any other account . . . , you must preserve that email by copying it to your official EOP email account or by forwarding it to your official email account within twenty (20) days."). The memorandum also confirmed "that [P]residential records are the property of the United States . . . . When you leave EOP employment, you may not take any presidential records with you." *Id.* at 2. Though Dr. Navarro now disputes the White House memorandum's interpretation of the reach of the statute, he does not contend that he was not so advised.

Vice President, or covered employee (1) copies an official electronic messaging account . . . in the original creation or transmission of the Presidential record . . . ; or (2) forwards a complete copy of the Presidential . . . record to an official messaging account . . . not later than 20 days after the original creation or transmission of the Presidential . . . record." 44 U.S.C. §§ 2209(a)(1)-(2). The Archivist is thereafter required to "make such records available to the public as rapidly and completely as possible consistent with the provisions of this chapter." *Id.* § 2203.

Dr. Navarro asserts that the request for emails regarding his White House duties that were received from others, rather than created by him, is outside the statute's scope, whether or not they were responsive to the emails he generated. This again evidences a misunderstanding of the statute's reach. Indeed, if the statute contemplates creating the full record of a covered employee's work, as it surely does, then wiping out part, if not half, of the record would contravene the intent of the statute. Moreover, contrary to Dr. Navarro's position, the PRA expressly defines Presidential records to include those "created *or received* by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President") (emphasis added); 44 U.S.C. §§ 2202(2), 2203(a)-(b). All the emails in Dr. Navarro's personal email account, whether created or received, are therefore subject to being assessed as potential Presidential records if they arose out of his employment in the administration.

Dr. Navarro's other arguments under section 2209 are equally without merit. He argues that the United States cannot rely on section 2209 because no court has yet interpreted it. *See* MSJ Opp. at 5-7. If applied, this contention would render every new statute unenforceable because no court would ever be able to interpret it a first time absent another court's also-prohibited first interpretation. The circularity of such a novel doctrine is self-evident.

It also has no merit in view of this Circuit's jurisprudence. *See CREW v. Cheney*, 591 F.

12

Supp. 2d 194, 216 (D.D.C. 2009) ("[I]t it borders on the absurd to believe that Congress statutorily defined Vice–Presidential records and required the Vice President to implement steps to preserve them, but denied any judicial review to prevent the Vice President from using a different definition for Vice–Presidential records.").  In *Am. Historical Ass'n v. Peterson*, 876 F. Supp. 1300, 1315 (D.D.C. 1995), the district court, in an action focused on the records of a former President, the court rejected the notion that judicial review was unavailable:

> it borders on the absurd to posit that Congress – in passing a statute to preclude former Presidents from disposing of Presidential records at will, and affording Presidents no discretion to restrict access to records after leaving office – intended that a former President's post-term decisions regarding disposal of such records be immune from judicial review.

*Id.* at 1315.  This reasoning applies with equal force to the records of a former covered employee.[5]

Accordingly, the Court declines to embrace an argument that would bar all judicial review of new statutes.

### 2.   United States' Power to Enforce PRA's Requirements

Dr. Navarro also maintains that because the statute sets out a general disclosure

---

[5] Under *Armstrong v. Bush ("Armstrong I")*, 924 F.2d 282, 290-91 (D.C. Cir. 1991), the decisions of a sitting President with respect to his or her records were deemed not to be subject to judicial review under the PRA, which did not create a private cause of action for enforcement. However, two years later, in *Armstrong v. Executive Office of the President ("Armstrong II")*, 1 F.3d 1274, 1293-94 (D.C. Cir. 1993) (per curiam), the court retreated from that position and held that although "the PRA impliedly precludes judicial review of the President's decisions concerning the creation, management, and disposal of presidential records during his term of office," courts "may review guidelines outlining what is, and what is not, a 'presidential record' " because to hold otherwise would "be tantamount to allowing the PRA to functionally render the FOIA a nullity." The court was clear in stating that "[t]he *Armstrong I* opinion does *not* stand for the unequivocal proposition that all decisions made pursuant to the PRA are immune from judicial review." *Id.* at 1293. (emphasis added). Subsequently, in *Peterson*, the court reviewed an agreement regarding a former President's personal electronic records and held that "judicial review may be available to ensure that Presidential records are not disposed of as personal records at the end of an Administration and that, instead, all Presidential records fall subject to the Archivist's "affirmative duty to make such available to the public." 876 F. Supp. at 1314.

13

requirement with no apparent enforcement mechanism (other than to discipline a wayward employee), there is no power in the United States to enforce the statute and require production of the detained Presidential records by any other method. MSJ Opp. at 7. In short, Defendant suggests that because there is no explicit statutory scheme for compelling the production of Presidential records wrongfully held by a former covered employee, the United States cannot prevail in seeking a writ of replevin. This approach, too, would nullify effectuation of the statute's purpose.

Dr. Navarro's argument appears to be a variation on the motion to dismiss in *CREW*.  In that case, private plaintiffs pled several causes of action, but did not plead a cause of action under the PRA, although their subsequent motion papers did suggest that they were requesting the Court to imply a private cause of action under the PRA. 593 F. Supp. 2d at 217.

> Although the PRA certainly creates ministerial obligations for the President and Vice–President, and although Plaintiffs are undoubtedly correct that the PRA was enacted to ensure the preservation of Presidential records for "scholars, journalists, researchers and citizens of our own and future generations," (quoting 124 Cong. Rec. H34894 (daily ed. Oct. 10, 1978) (Statement of Rep. Brademas)), the statute nevertheless does not contain language evincing a Congressional intent to allow suits by private plaintiffs proceeding directly thereunder. The Supreme Court has explained that the private right of action inquiry must focus on whether the *statutory text* "[is] 'phrased in terms of the persons benefitted.'" Here, Plaintiffs submit that the PRA defines "the persons benefitted" in 44 U.S.C. § 2202, the provision stating that *"[t]he United States shall reserve and retain complete ownership, possession, and control of Presidential records."*

*Id.* at 218 (cleaned up).

Here, Dr. Navarro suggests that the United States may not maintain an action to vindicate the purposes of the PRA.  As the above makes clear, the United States—which "shall reserve and retain complete ownership, possession, and control of Presidential records"—is precisely the plaintiff to bring an action under the statute, as it did here in seeking a writ of replevin for Presidential records wrongfully retained.

Although the PRA sets out a statutory scheme, it is not in the Congress' ambit to envision

14

every manner in which a person might seek to evade the requirements of a statute. And clearly, while the statute seeks to make plain that all Presidential records are to be provided to NARA, Congress did not delineate provisions to cover a situation where a former covered employee would (a) maintain a private, encrypted email account with official emails, (b) not follow the prescribed transfer of those emails to the official account, and (c) refuse to return those emails that constitute Presidential records.  Enforcement of the statute by the government to assert its ownership rights militates that it must be free to utilize those legal processes available to it whether or not they are expressly provided for by statute   In this instance, the United States correctly invokes the Court's judicial power to require the return of the wrongfully retained emails.

3.   Vagueness

Dr. Navarro also asserts that the statute is "vague" and unsettled and therefore "there exist genuine disputes of material fact as to whether any alleged actions Dr. Navarro engaged in were even a violation of the PRA." MSJ Opp. at 7.   Apart from the legal objections raised in his Statement of Undisputed Material Fact Response, Dr. Navarro asserts no credible challenge to the statutory scheme as it applies to his actions. The undisputed material facts and the clear language of the statute make it plain that the United States has made out an unchallenged factual case that Dr. Navarro wrongfully retains Presidential records that are the property of the United States. Absent some other compelling reason not to issue a writ of replevin, Dr. Navarro must return the withheld Presidential records.

4.   Applicable Deadline for Compliance

Dr. Navarro contends that because the statute did not contemplate these circumstances, and therefore did not set out any deadline by which Presidential records held in a personal email account are to be returned, the United States may not have the Court compel their return under a

15

writ of replevin. Rather, Dr. Navarro maintains that he has "asserted a privilege validly delaying the time within which he must produce the records sought by the Archivist." MSJ Opp. at 10; *see also* MTD at 6. In its present posture, this excuse, even if valid, has no obvious date of termination and therefore runs counter to the intent and provisions of the PRA.

It bears note that under the PRA Dr. Navarro's obligation to copy from or forward from his personal account to the official account was "no later than" twenty (20) days after the original creation or transmission.[6] Plainly, he did neither during his tenure in the White House, nor has he forwarded Presidential record emails in the years since. In light of the statute's expectations and the lack of any cognizable justification for his delay in complying with the statute, the Court declines to accept the proposition that compliance is indefinitely delayed.

### B. Fifth Amendment Production Privilege

Dr. Navarro asserts that his refusal to return the emails in question was justified because he "reasonably believed that the production of records to the United States risked the implication of his Fifth Amendment right against self-incrimination." MSJ Opp. at 3. But he goes no further, and does not explain in any way why production of the requested Presidential records would tend to incriminate him. He merely says so. It is precedent of long standing that he "is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified[.]" *See Hoffman v. United States*, 341 U.S. 479, 486 (1951) (citation omitted). "To sustain the privilege, it need only be evident from the implications of the question, in the

---

[6] The PRA requires the President, the Vice President, and Covered Employees to "cop[y] their "official electronic messaging account" when sending a communication using a non-official account or to "forward[] a complete copy" of an email sent on their non-official account to their "official electronic messaging account . . . not later than 20 days after the original creation or transmission" of the record. 44 U.S.C. §§ 2209(a)(1), (a)(2).

16

setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Id.* at 486-87.

In this setting, Dr. Navarro has been requested to return to the United States emails from his personal email account that constitute Presidential records and which were in all instances prepared during his tenure at the White House from 2017 to 2021.  Producing these pre-existing records in no way implicates a compelled testimonial communication that is incriminating.  *See United States v. Doe,* 465 U.S. 605, 612 n.10 ("If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged."); *Fisher v. United* States, 425 U.S. at 408 ("The Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a Testimonial Communication that is incriminating.").  Such "pre-existing, voluntarily prepared documents" are not covered by the Fifth Amendment.  *See United States v. Hubbell*, 167 F.3d 552, 567-69 (D.C. Cir, 1999), *aff'd*, 530 U.S. 27 (2000).

Indeed, the production of these pre-existing emails "'does not compel oral testimony,' nor would it 'compel the [recipient] to restate, repeat, or affirm the truth of the contents of the documents sought.'"  *SEC v. Karroum*, Misc. A. No. 15-590 (JEB), 2015 WL 8483246 *3 (D.D.C. Dec. 9, 2015) (quoting *Fisher v. United States*, 425 U.S. 391, 409 (1976)).  In other words, the mere act of production is "not testimonial in nature."  *Id.*

**C.  Replevin**

Finally, the Court agrees with the United States that the District of Columbia's replevin

statute provides a cause of action for the return of Dr. Navarro's unlawfully retained documents. Replevin "is, in general, an action in which the owner, or a person who has a general or special interest in some personalty either taken or detained by another, seeks to recover possession in specie, and, occasionally, the recovery of damages as an incident of the proceedings." Replevin, 7 American Law of Torts § 24:17 (West 2022).  Federal Rule of Civil Procedure 64 expressly contemplates that federal courts will issue writs of replevin, or other corresponding or equivalent remedies, specifying that the law of a forum state will govern except insofar as federal law applies.

District of Columbia law creates an action for replevin, allowing a Plaintiff "to recover personal property to which the plaintiff is entitled, that . . . [has] been wrongfully taken by or to be in the possession of and wrongfully detained by the defendant."  D.C. Code 16-3701.4. The "essence" of a replevin action under D.C. law is the "wrongful withholding of the property in question." *Hunt v. DePuy Orthopedics, Inc.,* 729 F. Supp. 2d 231, 232 (D.D.C. 2010). Where, as here, a party has wrongfully detained property belonging to the United States, the United States has sued for the return of the property.  *See, e.g.*, *United States v. McElvenny,* 02-cv-3027, 2003 WL 1741422, at*1 (S.D.N.Y. Apr. 1, 2003) (seeking a writ of replevin for map of Cuba bearing notations made by President John F. Kennedy during the Cuban Missile Crisis and a collection of President Kennedy's papers regarding federal involvement in the integration of the University of Mississippi).

Courts in this Circuit considering a claim of replevin under the D.C. Code look to D.C. law, rather than any federal common law, to determine whether a party has stated a viable replevin claim.  *BMO Harris Bank N.A. v. Dist. Logistics, LLC*, Civ. A. No. 20-3425 (KBJ/RMM), 2021 WL 7448012, at *4 (D.D.C. July 23, 2021). In the District of Columbia, replevin is a cause of action, "brought to recover personal property to which the plaintiff is entitled, that is alleged to

18

have been wrongfully taken by or to be in the possession of and wrongfully detained by the defendant[.]" *BMO*, 2021 WL 7448012, at *4 (quoting *Hunt v. DePuy Orthopedics*, 729 F. Supp. 2d 231, 232 (D.D.C. 2010) (citing D.C. Code § 16-3701))).

> The District of Columbia's replevin statute provides in relevant part:

> The plaintiff sues the defendant for (wrongly taking and detaining) (unjustly detaining) the plaintiff's goods and chattels, to wit: (describe them) of the value of [specified amount of] dollars. And the plaintiff claims that the same be taken from the defendant and delivered to him; or, if they are eloigned, that he may have judgment of their value and all mesne profits and damages, which he estimates at [specified amount of] dollars, besides costs.

> D.C. Code § 16-3702 (emphasis added).  Defendant contends that the United States has failed to plead a replevin action because it does not set forth the "value of" the Presidential records detained by Dr. Navarro. MTD at 8, ECF No. 9.

Yet Dr. Navarro provides no support for the proposition that Courts must dismiss replevin actions whenever the plaintiff does not plead specific monetary damages. That information and the documents at present are solely in Dr. Navarro's possession. Its value becomes relevant only when the property at issue cannot be returned to the plaintiff and the alternative remedy sought is monetary damages. The remedy sought here is explicitly and solely the return of the wrongfully withheld property; the monetary value of the property is therefore irrelevant.

Pursuant to D.C. Code § 16–3702, a replevin plaintiff must demand *either* of two remedies: "[that the property] be taken from the defendant and delivered to him; *or, if they are eloigned*, that he may have judgment of their value and all mesne profits and damages, which he estimates at [a certain amount of] dollars, besides costs." D.C. Code § 16–3702 (emphasis added). The statute's use of the disjunctive makes plain that monetary value of property only becomes relevant when the property cannot be returned to the plaintiff, when compensation is the sole available remedy. This is consistent with the common law tradition that "[t]he primary relief sought in a replevin is

<center>19</center>

the return of the identical property, and damages are merely incidental." 66 Am. Jur. 2d Replevin § 1.

Moreover, Defendant's reliance on *BMO Harris* is misplaced.  In *BMO*, the bank failed to meet *either* requirement of the D.C. statute.  It neither stated the value of the equipment at issue nor did it claim that the equipment should be taken and delivered to it.  *Id.* at *9.  Here, the United States has plainly sought that emails be taken from Dr. Navarro and delivered to it. Having met one of the two prongs of the statute, the failure to state a monetary value for the emails—which remain in Defendant's control—is unnecessary to state a claim.

Dr. Navarro also contends that the emails are not subject to replevin, on the dubious ground that his possession was the "result of an innocent oversight and therefore not willful." As support, he maintains that once the "process" is complete (presumably at some future date following the audit of his emails, and the resolution of the House of Representatives' subpoena and his indictment for contempt of Congress), the records will be provided.  MSJ Opp. at 8.  In the context of his counsel's admission that there are between 200 and 250 Presidential records in the 1,700 emails reviewed, *see* Bosenko Decl. ¶ 9, this merely supports the view that the retention of the records is wrongful. The contention also fails as a threshold matter, as Dr. Navarro's *mens rea* is irrelevant. The clear record and undisputed fact that he created or received the emails on his private email account relating to and while performing duties for the administration, and neither included them in his official emails nor returned them to NARA upon request, therefore wrongfully detaining them, is the sole relevant inquiry.

Dr. Navarro's final argument is that Presidential records are not subject to replevin law because they are not personal property.  "Personal property" is the complement to "real property," and it is well-established that personal property encompasses "[a]ny moveable or intangible thing

that is subject to ownership and not classified as real property." *Property*, Black's Law Dictionary (11th ed. 2019).  The history of the PRA makes it plain that Presidential records plainly fall into this broad definition, whether they are physical objects (like the map sought in *United States v. McElvenny*) or electronic records (like the emails in *Karroum*).  Therefore, in *Nixon v. United States,* the D.C. Circuit—prior to the enactment of the PRA—held that presidential materials were the President's personal property.  978 F.2d 1269, 1284 (D.C. Cir. 1992).  The passage of the PRA in 1978 changed the ownership of Presidential records, converting them from being the personal property of the president into the personal property of the United States. See 44 U.S.C. § 2202. Their fundamental character as Presidential records is as personal property.  That these records are electronic as opposed to paper make no difference to their character.  *See Armstrong*, 1 F.3d at 1283 (emails are records under the Presidential Records Act and therefore constitute personal property).

Dr. Navarro's contrary argument is based on a district court case finding that airline frequent flyer miles are not personal property, *see* MSJ Opp. at 8 (citing *Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008)); MTD 9-10 (same).  The Court is unpersuaded.  Frequent flyer miles are different in kind from Presidential records.  The *Ficken* court's finding that frequent flyer miles "amounted to credit with the airline" and represented an "intangible right" rather than "personal property," 578 F. Supp. 2d at 143, is distinct.  Presidential records are not intangible credits issued by a third-party, but, as discussed above, personal property wholly within the ambit of the statutory scheme.

## IV.    CONCLUSION

For the foregoing reasons, Court **GRANTS** the United States' [7] Motion for Summary Judgment and **DENIES** Defendant's [9] Motion to Dismiss.  An appropriate Order setting out the

relief awarded accompanies this Memorandum Opinion.

Date:  March 9, 2023

<div style="margin-left:50%">

_____
/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
</div>

22