ARGUMENT NOT YET SCHEDULED

APPEAL NO. 23-5062

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

UNITED STATES OF AMERICA,                                          APPELLEE

v.

PETER K. NAVARRO,                                          APPELLANT.

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

APPELLANT'S EMERGENCY MOTION FOR STAY PENDING APPEAL

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC  20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Appellant Peter K. Navarro*

1:22-cv-02292-CKK

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................3

I.              INTRODUCTION..................................................................5

II.            LEGAL STANDARD .............................................................7

III.           ARGUMENT .......................................................................9

    *A.    Appellant is Likely to Succeed on the Merits, or Has Made a Substantial Case on the Merits of a Novel Legal Issue.......................11*

    *B.    Appellant is Likely to Suffer Irreparable Harm if Compelled to Provide the United States with Documents at Issue, Because He Has a Privilege Against Self-Incrimination and He is Subject to Multiple Government and Criminal Inquiries ...................................................20*

    *C.    A Stay Will Not Harm the United States nor Affect the Public Interest ...........................................................................................21*

    *D.    The Scope of the Presidential Records Act and Whether the United States Can Compel Production Through an Unrelated Statute are Matters of First Impression.................................................................23*

CONCLUSION ...................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors*, 141 S. Ct. 2485 (2022).............................................. 8, 20, 21

*Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 904 F.3d 1014 (D.C. Cir. 2018) ................................................................................................23

*Comm. on Judiciary, U.S. House of Representatives v. Miers*, 542 F.3d 909 (D.C. Cir. 2008) ................................................................................................10

*Comm. On the Judiciary v. McGahn*, 407 F. Supp. 3d 35 (D.D.C. 2019) ....... 10, 13

*Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363 (D.D.C. Sept. 15, 2022).............21

*Ctr. for Int'l Envtl. Law v. Office of the United States Trade Representative*, 240 F. Supp. 2d 21 (D.D.C. 2003) ...............................................................................10

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) ....9, 10

*FDA v. Brown & Williamson Tobacco Corp.*, 529, U.S. 120 (2000), *superseded by statute* ...............................................................................................................22

*Fisher v. United States*, 425 U.S. 391 (1976) ........................................................24

*Greenberg v. FDA*, 803 F.2d 1213 (D.C. Cir. 1986)..............................................21

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ...............................................................9

*Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014) .....................................................22

*Merck & Co., Inc. v. United States HHS*, 962 F.3d 531 (D.C. Cir. 2020)..............22

*Montgomery v. Rosen*, 2021 U.S. App. LEXIS 1160 (D.C. Cir. Jan. 11, 2021) .......9

*Nken v. Holder*, 556 U.S. 418 (2009) .................................................................9, 25

*Regulatory Grp. v. EPA*, 573 U.S. 302 (2014) .......................................................22

*United States v. Hubbell*, 530 U.S. 27 (2000) .......................................................24

*United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003) ......................................................................................................... 18, 19

*United States v. Ponds*, 454 F.3d 313 (D.C. Cir. 2006)..........................................24

*Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014)........................ 8, 21, 22

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C. Cir. 1977) ................................................................................... 13, 23

*Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)..........................................23

**Statutes**

44 U.S.C. § 2203 ................................................................................... 10, 14, 23

44 U.S.C. § 2204 ......................................................................................... 23, 24

44 U.S.C. § 2209 ..................................................................................... 15, 17, 18

Presidential Records Act, 44 U.S.C. §§ 2201-2209 ...........................................7, 9

**Other Authorities**

The Federalist No. 28 (C. Rossiter ed. 1961) ..........................................................13

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................19

## I.    INTRODUCTION

In its Memorandum Opinion accompanying the District Court's denial of Appellant's Motion for a Stay of the District Court's Order compelling the production of certain documents presumed to fall under the purview of the Presidential Records Act ("PRA"), 44 U.S.C. §§ 2201-2209, the District Court writes that, "the PRA does no more than establish that the United States is the rightful owner of the emails unlawfully detained by [Petitioner].  Memorandum Opinion at 8 (Mar. 28, 2023) (ECF No. 23).  Further, the District Court describes the PRA as merely, "[a] statute governing who owns particular records or property," which therefore, "need not specifically authorize a cause of action when replevin is available as a matter of law."  *Id.*

This appeal of a final order challenges the District Court's conclusion that the United States can compel the production of records subject to the PRA within the possession of a former close advisor to a former President. The District Court concluded that it could compel such a production and that the appropriate vehicle for so doing is the District of Columbia's replevin statute.  *See* D.C. Code § 16-3702.

Appellant submits that the Presidential Records Act is hardly a statute governing the ownership of property and that the Act's failure to include a cause of action authorizing the United States to seek the compulsory production of records

presumed to be covered under the Act similarly precludes the United States from bootstrapping the statute of a Federal District or any State to achieve that purpose. The PRA's legislative history and the robust debate between the Executive – then President Lyndon Johnson – and the Legislature make clear that the Act contemplates far more than simply the transfer of ownership from the President of the United States to the Federal Government writ large.  *See Chairman's Notebook on Presidential Records Act*, U.S. House of Representatives:  History, Art & Archive, *available at* https://history.house.gov/HouseRecord/Detail/15032450288 (last visited March 29, 2023).  The fact of the matter is that neither Congress nor the text of the PRA contemplated the utilization of a State's replevin statute to enforce the PRA.  To that end, the Supreme Court has expressly cautioned federal courts against finding implied causes of action.  *See, e.g., Comcast Corp. v. Natl'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020); *Hernandez v. Mesa*, 140 S. Ct. 735, 741-43 (2020); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1402 (2018); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001).  Thus, when this Circuit was confronted with the question of whether Congress had authorized the U.S. House of Representatives to utilize the Federal Courts to enforce its subpoenas, it concluded that Congress could not be presumed to have authorized such an action.  *Comm. on the Judiciary v. McGahn*, 973 F.3d 121, 123 (D.C. Cir. 2020), *vacated by* 2021

U.S. App. LEXIS 20759 (D.C. Cir. Jul. 13, 2021) ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis, and usually Congress should decide whether to authorize a lawsuit." (internal quotations omitted)).

Put simply, as the Supreme Court recently admonished, "[w]e expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Ala. Ass'n of Realtors v. HHS,* 141 S. Ct. 2485, 2489 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). Therefore, Appellant respectfully disagrees with the District Court that Appellant fails to present a complicated matter of first impression or that Appellant has failed to demonstrate significant material issues of both fact and law and respectfully requests this Court stay the District Court's March 9, 2023 Order directing Appellant to forthwith produce certain of Appellant's emails.

## II.    LEGAL STANDARD

Generally, stays are considered an extraordinary remedy, and require the party seeking a stay to bear the, "burden of showing that exercise of the court's extraordinary injunctive powers is warranted." *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). There are four "traditional" factors that govern a request for a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

will substantially injure the other parties interested in the proceeding; and (4)

where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987);

*see also generally Montgomery v. Rosen*, 2021 U.S. App. LEXIS 1160 (D.C. Cir.

Jan. 11, 2021) (D.C. Circuit granting a stay pending appeal based on the factors

outlined in *Nken*).

The first two factors, "are the most critical[]" in determining whether to

grant a motion to stay, *Nken*, 556 U.S. at 434, while the last two "merge when the

Government is the opposing party." *Id.* at 435.  The first two factors, likeliness of

success on the merits and the likeliness of irreparable harm, are considered

together: "[P]robability of success is inversely proportional to the degree of

irreparable injury evidenced.  A stay may be granted with either a high probability

of success and some injury, or *vice versa*.".  *See Cuomo*, 772 F.2d at 974.

Importantly, in cases of first impression, courts have granted stays without

considering these factors as stringently.  *See Ctr. for Int'l Envtl. Law v. Office of

the United States Trade Representative*, 240 F. Supp. 2d 21, 22-23 (D.D.C. 2003)

("[A]lthough the Court ultimately did not agree with defendants' position on the

merits, it is evident that defendants have made out a substantial case on the merits.

. . [t]hat this Court's decision centered on a novel and admittedly difficult legal

question weighs in favor of a stay." (internal quotations and citations omitted)).

*See also Comm. On the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 40 (D.D.C.

2019) (noting that the Court in *Comm. on the Judiciary U.S. House of*

*Representatives v. Miers*, 542 F.3d 909 (D.C. Cir. 2008) granted a stay primarily

based on the novelty of the issue. Here, for the first time ever, a District Court has

ordered that the United States of America may utilize the courts to force the

repossession of another's property and enforce the Presidential Records Act, 44

U.S.C. §§ 2201-2209 ("PRA"), through the laws of the District of Columbia – not

even that of a State, but rather a Federal District. It is thus beyond dispute that this

litigation involves a case of first impression.

## III.   ARGUMENT

"History, custom, and usage indicate unequivocally that, prior to [enactment

of the Presidential Recordings and Materials Preservation Act ("PRMPA"), 44

U.S.C. § 2111], Presidents exercised complete dominion and control over their

presidential papers." *Nixon v. United States*, 978 F.2d 1269, 1277 (D.C. Cir.

1992). With the enactment of the PRA four years later, Congress specified that the

United States, "shall reserve and retain complete ownership, possession, and

control of Presidential records." 44 U.S.C. § 2202, *quoted in Trump v. Thompson*,

20 F.4th 10, 27 (D.C. Cir. 2021).

Although ownership of Presidential records is addressed by the PRA, and the Act provides that once a President's time in office concludes, the "Archivist of the United States shall assume responsibility for the custody, control, and preservation of, and access to, the Presidential records of that President," 44 U.S.C. § 2203(g)(1), the PRA does not address any means by which the Archivist, or the United States, are to effect a taking of the records to be deemed Presidential records as defined under the statute. *C.f. Nixon*, 978 F.2d at 1277 (holding that the enactment of the PRMPA effected the "taking" of President Nixon's Presidential records under the Fifth Amendment of the Constitution).

Specifically, neither the District Court nor the United States cite any authority to the contrary. Indeed, the United States has recently affected the repossession of Presidential records of former President Trump through the execution of a search warrant for those records in compliance with the Fourth Amendment to the Constitution. *See Trump v. United States*, 54 F. 4th 689, 694-95 (11th Cir. 2022) (describing how, after first seeking the *voluntary* return of former President Trump's Presidential records, the Department of Justice sought a search warrant for the return of such records). Nor does the lone case cited by the United States - *United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003) – address whether an action for replevin is the proper means by which to

effect the repossession of Presidential records insofar as the PRA does not address the records of Presidential Administrations to conclude prior to its passage.

Rather, for the first time in the PRA's forty-four year existence, the United States sought, and the District Court required in a judgment as against a former close presidential advisor, the production of records generated during that advisor's tenure. As part of this decision, the District Court unceremoniously dismissed Appellant's concern that the production of these records could potentially infringe upon his rights under the Fifth Amendment – concerns unequivocally legitimate insofar as Appellant remains subject to criminal prosecution and very likely is the subject of additional criminal inquiries by the United States.

> A.   *Appellant is Likely to Succeed on the Merits, or Has Made a Substantial Case on the Merits of a Novel Legal Issue*

Ordinarily, the chance that a movant will succeed on the merits must be "substantial" in order to grant a stay pending appeal. *Comm. On the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019) *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).  The party seeking a stay must, "raise[] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *McGahn*, 407 F. Supp. 3d at 38 (internal quotations omitted) (quoting *Holiday Tours, Inc.*, 559 F.2d at 844).  However, where there is a novel legal issue, Courts will grant stays upon a showing of a

"substantial case on the merits," rather than requiring likely success upon the merits. *See Ctr. for Int'l Envtl. Law*, 240 Fed. Supp. 2d at 22-23 ("[A]lthough the Court ultimately did not agree with defendants' position on the merits, it is evident that defendants have made out a substantial case on the merits. . . [t]hat this Court's decision centered on a novel and admittedly difficult legal question weighs in favor of a stay." (internal quotations and citations omitted)).  Appellant has, at least, outlined a substantial case on the merits.

In its Complaint giving rise to this action, the United States does not rely on the PRA to merely resolve the ownership of Presidential records.  To the contrary, the United States alleges, without support, that the PRA, "require[s] [Appellant] to . . . turn[] over to the Archivist [Presidential records] upon the end of the administration."  Complaint at ¶ 23 (Aug 3, 2022) (ECF No. 1) (quoting 44 U.S.C. § 2203).  Of note, § 2203(g) – cited by the United States – provides only that the Archivist has specific responsibilities at the end of a Presidential Administration. Neither the PRA, nor any other law or precedent, require a former close advisor to the President to produce records to the Archivist, let alone authorize the District Court to compel the production of such records.  Indeed, the fact that the PRA places some responsibility upon "covered employees," such as Appellant, does not change the fact that the statute is generally applicable only to the President and/or to the Archivist.

In reality, the only provision of the PRA relevant to Appellant for purposes of the instant action is § 2209; the only section placing any affirmative duties upon "covered employees," and in fact the only section of the PRA to use the term "covered employees."  Moreover, § 2209 explicitly limits its purview to records "created or sent" by a non-official email account and only provides a procedure to initiate an adverse employment action against "covered employees" who have willfully failed to turn over records created by private email.  *See* 44 U.S.C. § 2209.

It is this statutory uncertainty that precludes the District Court from concluding that the United States is entitled to judgement as a matter of law under an action for replevin pursuant to District of Columbia law.  Appellant thus respectfully disagrees with the District Court's conclusion that he has not adequately contested the applicability of the D.C. Code's replevin section to recover records subject to the PRA.  *See* Memorandum Opinion at 17-18 (March 10, 2023) (ECF No. 16).  As noted in Appellant's Motion to Stay the District Court's Order pending appeal, the District Court misconstrues Appellant's argument in surmising that Appellant bears no statutory responsibility under the PRA.  *See* Memorandum Opinion at 10-11 (March 9, 2023) (ECF No. 16).  Appellant concedes that the PRA required that Presidential records sent or received "using a non-official electronic message account" were to be forwarded "to an

official electronic messaging account of the President" "not later than 20 days after the original creation or transmission of the Presidential . . . record." 44 U.S.C. § 2209.

Rather, Appellant's contention is that the PRA does not authorize a District Court to compel the production of such records in the event of non-compliance with § 2209. Instead, § 2209 expressly provides that failure to comply with the twenty-day forwarding requirement, "shall be a basis for disciplinary action" to include removal, suspension, reduction in grade or pay, and/or furlough. *See* 5 U.S.C. 7501, *et seq.*

The District Court concludes this reading of the PRA is fallible insofar as it would, "free [Appellant] and every other former covered employee of their clearly stated statutory obligations under the PRA, and render the statute a nullity for its expressed purpose." Memorandum Opinion at 6 (March 28, 2023) (ECF No. 23). To the contrary, Appellant's reading of the statute recognizes the most appropriate party for the enforcement the obligations imposed by the PRA on "covered employees": the "supervisors" authorized to impose disciplinary adverse actions upon "covered employees" who fail to comply with the statute's requirements. *See* 44 U.S.C. § 2209(b). As this Circuit recently acknowledged in considering the legislative intent of Congress, "[t]he expression of one thing implies the exclusion of the other." *Comm. on the Judiciary v. McGahn*, 973 F.3d 121, 123 (D.C. Cir.

2020), *vacated by vacated by* 2021 U.S. App. LEXIS 20759 (D.C. Cir. Jul. 13, 2021). There, the Court refused to recognize a cause of action permitting *the U.S. House of Representatives* to bring suit to enforce its own subpoenas: "time and again, the Supreme Court has warned federal courts to hesitate before finding implied causes of action—whether in a congressional statute or in the Constitution." *Id.*

Nor does Rule 64 of the Federal Rules of Civil Procedure avoid the dilemma created by the absence of any cause of action authorizing a District Court to compel the production of Presidential records under the PRA at the request of the United States. "Rule 64 speaks to provisional remedies prior to judgment." 11A Wright & Miller, Federal Practice and Procedure § 2931 (3d ed.). *See also U.S. v. Cohen*, 152 F.3d 321, 325 (4th Cir. 1998) ("F.R.C.P. 64 . . . regulates an alternative means for *preserving* assets." (emphasis added)); *Crump v. Bank of America*, 235 F.R.D. 113, 115 (D.D.C. 2006) (noting that Rule 64 governs "provisional remedies prior to the entry of judgment").

Even were Rule 64 not limited to pre-judgment remedies, the District of Columbia's replevin statute has been strictly construed. *See Deegan v. Strategic Azimuth LLC*, 768 F. Supp. 2d 107, 115-17 (D.D.C. 2011) (noting that a replevin action requires specific pleading of value in dollars of the alleged wrongfully withheld material regardless of if they are goods, chattels, or eloigned, and

dismissing an otherwise valid replevin complaint because, "the D.C. Code is very particular about how any complaint in replevin must be phrased").

In effect, the United States seeks to usurp the legislative prerogative of Congress by utilizing the statute of a Federal District to enforce the PRA for separated "covered employees" where the PRA itself does not otherwise provide any enforcement mechanism.  And while the District Court makes light of Appellant's reference to Alexander Hamilton's belief that federalism would avert "attempts of the government to establish tyranny," The Federalist No. 28, pp. 180-181 (C. Rossiter ed. 1961), *quoted in Gregory v. Ashcroft*, 501 U.S. 452, 459 (1991), the import of the Supreme Court's anti-commandeering doctrine cannot be ignored:

> The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officer, or those of their political subdivisions, to administer or enforce a federal regulatory program.  It matters not whether policymaking is involved, and no case-by-case weighing of the burdens or benefits is necessary; such commands are fundamentally incompatible with our constitutional system of dual sovereignty.

*Printz v. United States*, 521 U.S. 898, 935 (1997).

The issue of whether a federal agency can use unrelated statutes to enact their purposes has recently been considered by the Supreme Court.  In *Alabama Association of Realtors, et al vs. Department of Health and Human Services, et al*, the Supreme Court considered whether the Centers for Disease Control ("CDC")

16

could rely upon a statute granting the entity specific methods to curb the spread of the Covid-19 pandemic to administratively impose a moratorium on evictions in high-volume Covid-19 cities.  141 S. Ct. 2485 (2022).  The Court held that Congress is typically expected to, "speak clearly when authorizing an agency to exercise powers of vast economic and political significance."  *Id.* at 2489 (internal quotations omitted) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324, (2014)).  Ultimately, the Court concluded that, even if the underlying goal of the moratorium on eviction was "in pursuit of a desirable end", the CDC had exceeded the scope of its statutory authority by relying on a limited statute to impose a broad moratorium and that were Congress to have intended for a national moratorium, it would need to expressly authorize it rather than let the CDC infer such broad authority on its own.  *Ala. Ass'n of Realtors*, 141 S. Ct. at 2490.

So too here has the United States, on behalf of the U.S. National Archives and Records Administration exceeded the scope of its authority in seeking the compulsory production of records presumed to be subject to the PRA.  Contrary to the District Court's assertion that reliance on *Ala. Ass'n of Realtors* is misplaced insofar as, "[t]he United States simply seeks the return of its property and [that] the United States may avail itself of judicial process to vindicate its property rights," Memorandum Opinion at 9 (March 28, 2023) (ECF No. 23), neither the District Court nor the United States cite any actual authority authorizing this action.

For this apparent authority, the District Court again cites *United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003).  There, the United States sought possession of maps and other materials in the possession of an unrelated private citizen.  The issue before that District Court was whether President John F. Kennedy had lawfully bequeathed the materials to the United States.  Ultimately, the District Court concluded that materials in question lawfully belonged to the United States.

*McElvenny*, however, did not involve a challenge to the United States' utilization of a replevin action to enforce the PRA and the PRA had not yet been amended to include § 2209 and the requirement that Presidential records be forwarded to, "an official electronic messaging account of the President."

The granting of summary judgment requires both a finding that there, "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Cowan v. FCC*, 2022 U.S. Dist. LEXIS 166363, at *14 (D.D.C. Sept. 15, 2022) (quoting Fed. R. Civ. P. 56(a)).  While Appellant does not agree with the contention that there were no disputes of material fact, Appellant also made it explicitly clear that the United States is nevertheless not entitled to judgement as a matter of law.  Summary Judgment is a "drastic remedy [and] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue."  *Cowan v. FCC*, 2022 U.S.

Dist. LEXIS 166363, at *14 (D.D.C. Sept. 15, 2022) (quoting *Greenberg v. FDA*,

803 F.2d 1213, 1216 (D.C. Cir. 1986)).  Accordingly, Appellant is likely to

succeed on the merits on appeal. that the principle from *Alabama Association of*

*Realtors* is a longstanding one and one that the Supreme Court and subsequent

interpretation in this Circuit have noted means that, "courts should not lightly

presume congressional intent to implicitly delegate decisions of major economic or

political significance to agencies[,]" where a longstanding statute has never been

used in such a way.  *See Merck & Co., Inc. v. United States HHS*, 962 F.3d 531,

540 (D.C. Cir. 2020) (citing *Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014)

(quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529, U.S. 120, 133 (2000),

*superseded by statute*)).  *See also Utility Air Regulatory Grp. v. EPA*, 573 U.S.

302, 324 (2014) ("When an agency claims to discover in a long-extant statute an

unheralded power to regulate a significant portion of the American economy, we

typically greet its announcement with a measure of skepticism.  We expect

Congress to speak clearly if it wishes to assign an agency decisions of vast

economic and political significance") (internal citation omitted) (quoting *Brown &*

*Williamson*, 529 U.S. at 159-60).

Despite forty-four years since its passage – including at least one

amendment – the PRA's sole enforcement authority is limited to the discipline of

recalcitrant "covered employees" by their "supervisors."  It does not authorize a

District Court to compel the production of Presidential records and Appellant is thus likely to succeed on the merits of this action.

> B.    *Appellant is Likely to Suffer Irreparable Harm if Compelled to Provide the United States with Documents at Issue, Because He Has a Privilege Against Self-Incrimination and He is Subject to Multiple Government and Criminal Inquiries*

The second factor requires that irreparable harm is, "both certain and great . . . and actual [rather than] theoretical." *Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (internal quotations omitted) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Further, the movant must, "substantiate that irreparable injury is likely to occur." *Wis. Gas Co.*, 758 F.d at 674 (citing *Holiday Tours, Inc.*, 559 F.2d at 843 n.3). Here, the harm is in fact both great and likely to occur. Despite the assertions of the United States, the Court's Order compels the production of records which cannot thereafter be returned. Indeed, as Appellant asserted in his briefing, the production of such records could potentially incriminate him in future criminal actions, a prospect that is very real insofar as the initiation of the request for such records was made at the behest of a congressional subcommittee unrelated to the National Archives and Records Administration. Complaint ¶¶ 27-28 ("Through the Subcommittee [on the Coronavirus Crisis]'s work, NARA became aware of Mr. Navarro's use of a non-official email account to send and receive presidential records.").

The requirement that Appellant turn over documents that could be then used against him in other proceedings clearly imposes upon his privilege against self-incrimination.  *See United States v. Hubbell*, 530 U.S. 27 (2000).  While the United States and the lower court have both sought to thread the needle as to why the act of production privilege does not apply here, Appellant's situation falls squarely into the type of situation anticipated by the Supreme Court and this Court in subsequent interpretation of *Hubbell*.  Ultimately, the United States seeks to have Appellant identify materials they were otherwise entirely unaware of and provide them with such materials, no questions asked.  *See United States v. Ponds*, 454 F.3d 313, 323 (D.C. Cir. 2006) ("[T]o determine whether an act of production implicates the Fifth Amendment, the court looks only to the communicative aspects of the act of production itself and whether those tacit averments as to the existence and location of the documents add anything significant 'to the sum total of the Government's information." (quoting *Fisher v. United States*, 425 U.S. 391, 411 (1976)).

### C.    *A Stay Will Not Harm the United States nor Affect the Public Interest*

In cases where the party opposing the stay is the United States, the last two factors, "the harm to the opposing party and weighing the public interest[,] . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Ultimately, the United States has not stated any sort of harm that will befall them if they get the alleged PRA records once the criminal proceedings and government inquiries as they relate to Appellant have concluded. Nor can the United States point to the statute to establish such a threat of harm to their intersests: the PRA itself states that the Archivist has an affirmative duty to make records, "available to the public *as rapidly and completely as possible consistent with the provisions of this chapter*." 44 U.S.C. § 2203(g)(1) (emphasis added). Such a duty does not provide the United States with an interest that would be harmed if the transfer of PRA records had to wait until Appellant's rights are ensured as protected, because transferring the records at a later date still allows the United States to make them available as rapidly and completely as possible.

Similarly, the public interest will be minimally affected if a small batch of PRA records are delayed in their release. The PRA makes clear that a portion of its purpose is to allow public access to certain records after the end of a President's term in office. 44 U.S.C. § 2204. Such an interest is not negatively affected if the custodian of such records seeks to briefly delay the transfer of records to the Archivist in an effort to protect his own rights as they relate to the transfer. Similarly, the statute allows the President to dictate for certain records to have their public access restricted for a period of up to 10 years, meaning the statute anticipated the potential that some documents would be delayed in their release by

up to 10 years.  44 U.S.C. § 2204 (a).  Such a potential delay at the very least

demonstrates that the United States and public understand that the access to

records pursuant to the PRA may be delayed.

>    D.    *The Scope of the Presidential Records Act and Whether the*
>          *United States Can Compel Production Through an Unrelated*
>          *Statute are Matters of First Impression*

Ultimately, the extent to which the PRA and an unrelated state statute can be

used to compel a former White House employees to transfer records to the United

States is a matter of first impression.  Further, the United States has essentially

admitted that this exact situation is a matter of first impression.  See Combined

Reply ISO Motion for Summary Judgment and Opposition to Defendant's Motion

to Dismiss, p. 7, p. 7 n.4, (Oct. 4, 2022) (ECF No. 013).  ("That no court has yet

had occasion to interpret section 2209 [of the PRA] does not change the fact that it

is the law, or that this Court is Competent to interpret it in the first instance. . .

[j]urisprudence on the PRA is understandably sparse, as administrations have

generally cooperated with White House lawyers, White House records

professional, and the Archivist to ensure compliance with the PRA since its

enactment.").

As this matter is a matter of first impression, the Court should grant the stay

pending appeal as a result of this one factor alone.

## CONCLUSION

For all of the foregoing, Appellant respectfully requests this Court grant a stay of the District Court's March 9, 2023 Order so as to permit Appellant to appeal this novel legal matter.

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 32(a)(7)(B), that the foregoing brief complies with the type-volume limitation because it contains 4,691 words, and thus not more than 5,200 words, excluding those exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

/s/
Stanley Woodward Jr.

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on March 30, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/
Stanley Woodward Jr.
