UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>         Plaintiff,<br><br>     v.<br><br>PETER K. NAVARRO,<br>         Defendant. | Civil Action No. 22-2292 (CKK) |

MEMORANDUM OPINION
(March 28, 2023)

Before the Court is Defendant Peter K. Navarro's ("Defendant" or "Dr. Navarro") [18] Motion for Stay Pending Appeal. Defendant seeks a stay of this Court's [16] Order granting summary judgment to the United States and ordering Dr. Navarro to produce "forthwith" 200 to 250 documents he had previously determined were Presidential records under the Presidential Records Act of 1978, 44 U.S.C. §§ 2201 *et seq.* ("PRA"), as well as requiring him on or before thirty days thereafter to meet and confer to discuss the search terms and methodology used, or to be used, to unequivocally identify Presidential records in Defendant's possession. In florid terms, Defendant argues that this is a case of first impression and any ruling against him undermines key constitutional precepts of federalism. The Court disagrees.

As discussed in the Court's March 9, 2023 Memorandum Opinion, Dr. Navarro was a "covered employee" under the PRA while he worked in the Executive Office of the President and in other jobs in the Executive Branch. Like the many thousands of Executive Branch employees before him in the 45 years since the PRA was enacted, he was subject to its clear document retention, preservation, and provision requirements. *Id.* at §§ 2201-2209. If this is a case of first impression, as he contends in seeking a stay pending appeal, it is only because, unlike his many

1

thousands of public servant predecessors, Dr. Navarro is apparently the first to steadfastly refuse to comply with the Act's requirements and, in excuse, assert a series of meritless arguments to evade his statutory responsibilities. At its heart, Dr. Navarro's motion is little more than a rehashing of the same arguments the Court has previously rejected on the merits. Defendant's newfound concerns for federalism fare no better than his earlier arguments. Because he has not shown a likelihood of success on the merits, irreparable harm certain to occur absent interlocutory relief, or a weighty interest in retaining property that he concedes does not belong to him, no stay shall issue. Accordingly, and upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court shall **DENY** [18] Defendant's Motion for Stay Pending Appeal.

## I.    BACKGROUND

The Court previously set out this case's factual and legal background in substantial detail in the Court's last Memorandum Opinion, ECF No. 15. The Court restates only such facts here as are necessary for the resolution of the pending Motion.

Briefly, Dr. Navarro was a "covered employee" under the PRA from January 2017 to January 2021. 44 U.S.C. § 2201(2). Consistent with the purpose of the statute, he was required to preserve all communications by him that were generated or received in the course of his employment with the Executive Branch. *Id.* § 2209. More particularly, the PRA provided that any emails in a non-official email account were to be transferred to his official account no later

---

[1] The Court mainly considered:
- Defendant's Motion for Stay Pending Appeal, ECF No. 18 ("Mot." or "Motion ");
- Plaintiff's Opposition to Defendant's Motion for a Stay Pending Appeal, ECF No. 20 ("Opp."); and
- Defendant's Reply in Support of Defendant's Motion for Stay Pending Appeal, ECF No. 21 ("Repl.").

In an exercise of its discretion, the Court has concluded that oral argument would not assist in the resolution of this matter.

than 20 days after they were generated or received. *Id.* Dr. Navarro did in fact maintain a non-official email account but did not transfer the emails in that account that constituted Presidential records under the PRA to an official account during his employment. *United States v. Navarro*, Civ. A. No. 22-2292, 2023 WL 2424625, at *2 (D.D.C. Mar. 9, 2023). And after being requested to do so by both the National Archives and Record Administration ("NARA") and the Department of Justice in the summer of 2022, he declined to produce such documents as he had identified being Presidential records. This lawsuit ensued. *Id.*

In response to the government's Motion for Summary Judgment and in his own Motion to Dismiss, Defendant articulated a number of challenges to the statute's reach, all of which are discussed in Court's [15] Memorandum Opinion. He also asserted, without any supporting evidence or argument, that production of these previously created Presidential records would violate his right against self-incrimination. The Court declined to grant the motion to dismiss or deny the motion for summary judgment on Dr. Navarro's unsupported assertions that he might tend to be incriminated by documents he previously prepared during his government employment. *Id.* at *10. The Court therefore granted summary judgment in favor of the United States, and by contemporaneous [16] Order, ordered Dr. Navarro to produce previously identified President records forthwith, and confer with the government over search terms to ensure that all Presidential records in his private email account were identified and produced. Dr. Navarro has filed a Notice of Appeal, ECF No. 17, from that Order, and has moved the Court to stay its Order pending appeal. With that motion fully briefed, the Court turns to its resolution.

## II. LEGAL STANDARD

A party that moves for a stay pending appeal bears the burden of showing that the balance of four factors weighs in favor of the stay: (1) the likelihood that the party seeking the stay will

prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay. *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985); *see also Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987)); *Cmte. on the Judiciary U.S. House of Representatives v. Miers*, 575 F. Supp. 2d 201, 203 (D.D.C. 2008).

A stay pending appeal, like a preliminary injunction, is "an extraordinary remedy." *Id*. at 978. "[W]here a plaintiff cannot show a likelihood of success on the merits, 'it would take a very strong showing with respect to the other preliminary injunction factors to turn the tide in plaintiff's favor.'" *Al-Anzi v. Bush*, 370 F. Supp. 2d 188, 193 (D.D.C. 2005) (quoting *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 366-67 (D.C. Cir. 1999)). In the context of a district court, bearing the above four-factor test in mind, "[w]hat is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Wash. Metro. Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 845 (D.C. Cir. 1977).

### III. DISCUSSION

**A.   Likelihood of Success on the Merits**

But for Dr. Navarro's former workplace, very little about this matter would be remarkable, much less novel. Defendant agrees that he took property belonging to his former employer. He does not want to return the property. It is not his private property, as he now seems to contend, but the government's, as he previously conceded and as the Court has held. His former employer has sued for its return. As in myriad cases between private parties, replevin provides a cause of

4

action for the return of wrongfully detained property. This Court joins others in extending replevin to an action for the return of public property. The Court shall not stay the writ.

The Court explained this straightforward result at length in its prior Memorandum Opinion. Previously, the Court stressed that the PRA's purpose and provisions militate that Defendant comply with the statute's requirement that Presidential records be received and maintained by NARA for the public's benefit. Dr. Navarro's position would entirely frustrate that statutory goal. The chance that a movant will succeed on the merits must be "substantial" in order to grant a stay pending appeal. *Id*. at 843. The party seeking the stay must "raise[] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Id.* at 844. Dr. Navarro cannot meet this rigorous standard.

Dr. Navarro characterizes the Court's ruling as a matter of first impression on the contrived and inaccurate ground that never before has the United States of America been permitted to utilize the courts "to force the repossession of another's property" and "enforce the Presidential Records Act, through the laws of the District of Columbia – not even that of a State, but rather a Federal District." Mot. at 2. But this is not a novel and "admittedly difficult legal question," nor is it in any real sense a case of first impression. In any event, whether a case poses a novel legal question is not the test for a stay pending appeal; only this Circuit's traditional four-factor test is that which applies here. *See Cmte. on the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38–39 (D.D.C. 2019).

In an attempt to strengthen his contention that this ruling is so "serious, substantial, difficult and doubtful" as to require a stay pending appellate intervention, Dr. Navarro maintains that it implicates "'the doctrine of federalism and private property rights – '[t]he "constitutionally mandated balance of power' between the States and the Federal Government . . . adopted by the

5

Framers to ensure the protection of 'our fundamental liberties.'" *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242 (1985) *(*quoting *Garcia v. San Antonio Metro. Transit Authority*, 469 U.S. 528, 572 (1985) (Powell, J., dissenting)). And he goes so far as to quote Alexander Hamilton in asserting that the federalist system, presumably now at threat from this Court's ruling, is designed to suppress completely "the attempts of the government to establish tyranny." The Federalist No. 28, 180-181 (C. Rossiter ed. 1961).

In challenging the Court's ruling on appeal, Dr. Navarro seizes on the government's reliance on Federal Rule of Civil Procedure 64's use of replevin under the District of Columbia statute as a remedy and contends that "the United States seeks to usurp the legislative prerogative of Congress by utilizing the statute of a Federal District to enforce the PRA for separated 'covered employees' where the PRA itself does not otherwise provide any enforcement mechanism." Mot. 6. This reading, of course, would free him and every other former covered employee of their clearly stated statutory obligations under the PRA, and render the statute a nullity for its expressed purpose. And, insofar as authority for the proposition that federal courts can utilize state statutes, Congress has already spoken, clearly empowering the federal district courts to "under the law of the state where the court is located," authorize "replevin" as an equitable remedy to "secure satisfaction" of a particular judgment. Fed. R. Civ. P. 64(a)-(b); *see also Mac'Avoy v. Smithsonian Inst.*, 757 F. Supp. 60, 67 (D.D.C. 1991) (discussing replevin action for recovery of property allegedly wrongfully detained by the United States).

Moreover, it has long been the case that the United States may seek a writ of replevin for the return of property that another source of substantive law establishes the property as belonging to the United States. *See Langbord v. U.S. Dep't of Treasury*, 832 F.3d 170, 177 (3d Cir. 2016) (en banc) (Hardiman, J.) (approvingly recounting prior replevin action instituted by the United

6

States). To suggest otherwise would confound a court's equitable and legal authority to order the return of property belonging to the United States, an inherent power that the law has long held a federal district court to have. *See Slocum v. Mayberry*, 15 U.S. (Wheat.) 1, 9 (1817) (a federal court "having cognizance of the seizure [of property belonging to the United States], m[ay] reinforce a []delivery of the thing by attachment or other summary process against the parties who should devest such a possession"); *see also, e.g.*, *United States v. Steenerson*, 50 F. 504, 505 (8th Cir. 1892) ("where the ownership of logs [from logging camps] is dependent upon the question of the title of the lands, that issue may be investigated and determined in the action of replevin").[2]

Yet despite this recharacterization under the rubric of federalism and private property rights, Dr. Navarro's appellate position merely restates the arguments that this Court has previously rejected, *i.e.*, that without an explicit statutory enforcement mechanism, former covered employees can ignore the statute with impunity. Restating the arguments again does not imbue them with any more merit, any more substance, or any more of a likelihood he will succeed on the merits in an appeal.

As the Court explained, pursuant to the PRA, the United States "shall reserve and retain complete ownership, possession, and control of Presidential records." *Navarro*, 2023 WL

---

[2] The Court did not previously address whether federal common law could afford the United States a cause of action, and there is little need to discuss the matter here. Nevertheless, the Court briefly notes that a federal court generally should not fashion federal common law where state law will do. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 728-29 (1979). Because the Court has concluded that the District of Columbia's replevin statute provides a remedy and does not otherwise "frustrate" the United States' proprietary interests in its own property, the Court need not apply federal common law here. *See id.* at 728. That said, insofar as Defendant argues that the application of District of Columbia state law offends principles of federalism, that is a reason to apply federal common law, not to dismiss the action. *Cf. Clearfield Trust. Co. v. United States*, 318 U.S. 363, 366-67 (1943) (because the United States' proprietary interests "find their roots in the same federal sources," including a "constitutional function or power," federal common law may afford a remedy where substantive state law unduly impedes upon those interests).

2424625, at *8 (quoting *Citizens for Responsibility and Ethics in Wash. v. Cheney*, 593 F. Supp. 2d 194, 218 (D.D.C. 2009)). A statute governing who owns particular records or property need not specifically authorize a cause of action when replevin is available as a matter of law. In this regard, Defendant confuses the PRA with the cause of action of replevin. For the purposes of this action, the PRA does no more than establish that the United States is the rightful owner of the emails unlawfully detained by Defendant. As noted above, Defendant had conceded that the PRA does, in fact, conclusively determine that the United States is the rightful owner of approximately 200-250 of the withheld emails. It is the law of replevin that provides the cause of action; the Court does not and did not hold, and Plaintiff does not propose, that the PRA provides the cause of action for the return of the unlawfully detained property.

As a result, there is no "admittedly difficult legal question" here where "the equities of the case suggest that the status quo should be maintained." *Holiday Tours, Inc.*, 559 F.2d at 845. This is not a case of first impression, nor is it the first whiff of "tyranny" for the United States to seek the return of Presidential records (and *only* Presidential records) that are, by law, its property, *not* the private property of Dr. Navarro, as he now seeks to contend in framing his appeal. It is not a case of first impression that the United States seeks recourse through the courts. It is not a case of first impression that a court may issue a writ of replevin in favor of the United States. It is not a case of first impression that the courts utilize Federal Rule of Civil Procedure 64 to avail themselves of writs of replevin or similar remedies under the laws of a forum state. *E.g.*, *Bank of Am., N.A. v. Won Sam Yi*, 294 F. Supp. 3d 62, 71-72 (S.D.N.Y. 2018). That the District of Columbia is not a state, but a "Federal District" as Dr. Navarro repeatedly declaims, is a distinction without a difference for these purposes, and also a false legal premise rejected by a half-century of Supreme Court and Circuit precedent instructing the federal courts to treat District of Columbia

law as state law. *See, e.g., Palmore v. United States*, 411 U.S. 389 (1973); *United States v. Shephard*, 515 F.2d 1324, 1338 (D.C. Cir. 1975); *Rieser v. District of Columbia*, 580 F.2d 647 (D.C. Cir. 1978); Fed. R. Civ. P. 81(d)(2).

Dr. Navarro overreaches when he seeks to compare his refusal to return Presidential records to their rightful owner with the Centers for Disease Control's ("CDC") use of a statute allowing it a range of methods to combat infection in imposing a nationwide moratorium on evictions in high volume affected cities during the Covid-19 pandemic. He cites *Ala. Ass'n of Realtors. v. Dep't of Health and Human Servs.*, 141 S. Ct. 2485 (2021) for the proposition that Congress is typically expected to "speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Id.* at 2489 (internal quotations omitted) (quoting *Utility Air Regulatory Grp. v. EPA*, 573 U. S. 302, 324, (2014)). Here, no agency seeks to wield "vast economic [or] political" powers. The United States simply seeks the return of its property, and the United States may avail itself of judicial process to vindicate its property rights. *See, e.g.*, *United States v. McElvenny*, Civ. A. No. 02-3027 (JSM), 2003 WL 1741422, at *4 (S.D.N.Y. Apr. 1, 2003); *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 845 F. Supp. 2d 288, 302 (D.D.C. 2012) (noting that NARA may request "the Attorney General to institute an action for the recovery of missing records").

In short, the Court does not view Dr. Navarro's appeal as one challenging a ruling of first impression, nor one presenting a novel and admittedly difficult legal question, nor one that has "raise[d] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Holiday Tours, Inc.*, 559 F.2d at 844. Dr. Navarro does not satisfy the first prong of the four-factor test.

9

B.    **Irreparable Harm**

The second factor requires that irreparable harm is, "both certain and great. . . and actual [rather than] theoretical." *Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (internal quotations omitted) (*quoting Wis. Gas Co. v. FERC*, 758F.2d 669, 674 (D.C. Cir. 1985). Further, the movant must, "substantiate that irreparable injury is likely to occur." *Wis. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)* (*citing Holiday Tours, Inc*., 559 F.2d at 843 n.3).

Dr. Navarro asserts the truism that once his documents are produced, their contents cannot be kept secret and therefore, "[t]he requirement that Dr. Navarro turn over documents that could be then used against him in other proceedings clearly imposes upon his privilege against self-incrimination." Mot. at 7. This is the totality of his argument on irreparable harm.

As the Court discussed in its March 9 Memorandum Opinion, Dr. Navarro does not explain in any way why previously generated Presidential records would tend to incriminate him. Memo. Op. at 16. It is precedent of long standing that Dr. Navarro "is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified[.]" *See Hoffman v. United States*, 341 U.S. 479, 486 (1951) (citation omitted). Producing these pre-existing records in no way implicates a compelled testimonial communication that is incriminating. *See United States v. Doe,* 465 U.S. 605, 612 n.10 ("If the party asserting the Fifth Amendment privilege has voluntarily compiled the document, no compulsion is present and the contents of the document are not privileged.").[3] Importantly, such "pre-existing, voluntarily

---

[3] *See also* Fisher v. United States, 425 U.S. 391, 408 (1976) ("The Fifth Amendment does not independently proscribe the compelled production of every sort of incriminating evidence but

10

prepared documents" are not covered by the Fifth Amendment. *See United States v. Hubbell*, 167 F.3d 552, 567-69 (D.C. Cir, 1999), *aff'd* 530 U.S. 27 (2000).

To be clear, the Court has carefully considered Dr. Navarro's claim that production of these documents would violate his constitutional right against self-incrimination. However, as discussed in the Court's Memorandum Opinion, Defendant has failed to make any showing whatsoever that the privilege accrues to his production of the Presidential records he retains.

Unlike in *Holiday Tours*, 559 F.2d 841, the production of these documents does not rise to the economic destruction of a business. And while it is indeed self-evident that once produced, the documents – which belong to the government - are no longer kept inviolate in Dr. Navarro's possession, given that he has made no showing whatsoever that he has a right against self-incrimination from their production, he cannot demonstrate an irreparable injury. Accordingly, on the second prong of the governing test, the Court holds that Dr. Navarro has not met his burden of demonstrating that irreparable harm would result from the production of the Presidential records in his possession.

C.  **Substantial Injury and the Public Interest**

The final two factors of the test for issuing a stay pending appeal are whether "issuance of the stay will substantially injure the other parties interested in the proceeding and where the public interest lies." *Nken*, 556 U.S. at 426 (cleaned up). These questions merge where the United States is the opposing party. *Id.* at 435.

These two merged factors pose a closer question than the first two critical factors. Dr. Navarro's private, encrypted email account presumably contains documents prepared during his

---

applies only when the accused is compelled to make a Testimonial Communication that is incriminating.").

11

employment in the Executive Branch, from January of 2017 to January of 2021.  His refusal to return Presidential records from this email account dates to mid-2022.  This case dates to August 2022.  Under the PRA, the National Archives and Records Administration ("NARA") is charged with "assum[ing] responsibility for the custody, control and preservation" of Presidential records and "mak[ing] such records available to the public as rapidly and completely as possible consistent with the provisions of this chapter." 44 U.S.C. §2203(g)(1).  As to Dr. Navarro's obligations with respect to emails from a non-official account, the PRA requires them to be copied from the non-official account to the official account within 20 days of their original creation or transmission. *Id.* at §2209(a)(1)-(2).

While the public certainly has an interest in having these records made available to it, and the United States has an interest in vindicating the requirements of the PRA, given the time that has already passed since Dr. Navarro's tenure as a covered employee, the Court views it as unlikely that substantial injury will accrue to the government or that the public interest will be harmed by some additional delay over a discrete number of documents.  Nevertheless, the United States, and thereby the public, undoubtedly has a strong interest in vindicating its property rights.  The Court therefore finds that the final two factors stand in equipoise.

### IV.     CONCLUSION

Balancing all of the above under the governing law of this Circuit, the Court concludes that Dr. Navarro has not met his burden of demonstrating either a combination of probable success and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.  Therefore, the Court shall **DENY** Defendant's [18] Motion for Stay

Pending Appeal.  An appropriate order accompanies this Memorandum Opinion.


Date: March 28, 2023                      /s/
                                               COLLEEN KOLLAR-KOTELLY
                                               United States District Judge