ARGUMENT NOT YET SCHEDULED

APPEAL NO. 23-5062

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES OF AMERICA,                                    APPELLEE

v.

PETER K. NAVARRO,                                    APPELLANT.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

APPELLANT'S PRINCIPAL BRIEF

---

Stan M. Brand
(D.C. Bar No. 213082)
Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
400 5th Street NW, Suite 350
Washington, DC  20001
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com


*Counsel for Appellant Peter K. Navarro*

1:22-cv-02292-CKK

# TABLE OF CONTENTS

Table of Authorities ..................................................................................3

   I.    Introduction ..........................................................................5

   II.   Relevant Facts.......................................................................5

   III.  Relevant Law ......................................................................10

       a.  Presidential Records Act ..................................................10

       b.  Replevin..........................................................................12

   IV.  Argument ...........................................................................13

       a.  The United States Was Not Entitled to Judgment as a Matter of Law .14

Conclusion ..............................................................................................19

Statement Regarding Oral Argument ......................................................20

Certificate of Compliance ........................................................................21

Certificate of Service ...............................................................................21

## TABLE OF AUTHORITIES

**Cases**

*Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485 (2021) ........................... 13, 17

*BMO Harris Bank N.A. v. Dist. Logistics, LLC*, 2021 U.S. Dist. LEXIS 255094
  (D.D.C. Jul. 23, 2021) ......................................................................................12

*Ellipso, Inc. v. Mann*, 541 F. Supp. 2d 365 (D.D.C. 2008) .....................................12

*FDA v. Brown & Williamson Tobacco Corp.*, 529, U.S. 120 (2000), (*superseded by
  statute*) ............................................................................................... 13, 18, 19

*Ficken v. AMR Corp.*, 578 F. Supp. 2d 134 (D.D.C. 2008)....................................13

*Greenberg v. FDA*, 803 F.2d 1213 (D.C. Cir. 1986) ...............................................14

*Loving v. IRS*, 742 F.3d 1013 (D.C. Cir. 2014) ......................................................18

*Merck & Co., Inc. v. United States HHS*, 962 F.3d 531 (D.C. Cir. 2020)...............18

*Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015).......................................................14

*Moore v. Hartman*, 571 F.3d 62 (D.C. Cir. 2009)...................................................14

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ......................................................14

*United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31,
  2003) ................................................................................................................16

*Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014)...................... 13, 17, 18

*Wardman-Justice Motors v. Petrie*, 39 F.2d 512 (D.C. Cir. 1930) .........................12

### Statutes

D.C. Code § 16-3701 ...............................................................................16

Presidential Records Act of 1978, 44 U.S.C. §§ 2201-2209 .. 5, 8, 10, 11, 12, 15, 16

### Rules

Fed. R. Civ. P. 56 .................................................................................14

## I.    Introduction

Never before has the United States of America sought the return of "Presidential records" from a former senior presidential advisor through a State replevin action.  Ultimately, this appeal is narrow in scope:  Can the United States compel the production of electronic mail considered Presidential records and created with a personal electronic mail account under the Presidential Records Act of 1978, 44 U.S.C. §§ 2201-2209 ("PRA).

## II.    Relevant Facts

Dr. Peter K. Navarro was a member of Donald J. Trump's Presidential Administration from January 20, 2017 through January 20, 2021 in multiple executive branch cabinet or advisor roles, making him a "covered employee" under at least a portion of the Presidential Records Act of 1978.  *See* 44 U.S.C. § 2209(c)(1)(A)-(D) (defining "covered employee. . . [i]n this section" as "immediate staff of the President[,] the immediate staff of the Vice President[,] a unit or individual of the Executive Office of the President whose function is to advise and assist the President[,] and a unit or individual of the Office of the Office of the Vice President whose function is to advise and assist the Vice President.").  During his tenure in the White House, he had a personal electronic mail account on which he conducted limited official activities.  On November 18, 2021, the U.S. House of Representatives' Select Subcommittee on the Coronavirus Crisis ("Covid

Subcommittee") subpoenaed Dr. Navarro for records and testimony relating to his tenure in the White House.  On December 16, 2021, a representative for the National Archives and Records Administration contacted Dr. Navarro and stated that Dr. Navarro had "possession, custody, or control" of Presidential records and that this information had come to the attention of the United States through the actions of the Covid Subcommittee.  *See* Complaint, Exhibit 3, *United States v. Navarro*, 1:22-cv-22922 (D.D.C. Aug. 8, 2022) (ECF 1-4).  Soon after on February 9, 2022, the U.S. House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("January 6 Select Committee") also subpoenaed Dr. Navarro for testimony and documents, in response to which Dr. Navarro asserted executive privilege and testimonial immunity.  *See* Indictment, ¶ 7, *United States v. Navarro*, 1:22-cr-200 (D.D.C. June 2, 2022) (ECF No. 1).  On June 2, 2022, Dr. Navarro was indicted for contempt of congress, based on his actions in relation to his assertion of testimonial immunity and executive privilege made to the January 6 Select Committee.  *Id.*

On June 1, 2022, one day prior to Dr. Navarro's indictment for contempt of congress, an attorney with the Department of Justice ("DOJ") stated that he was authorized to file a lawsuit on behalf of the National Archives and Records Administration for the "recovery of wrongfully withheld documents" subject to the Presidential Records Act of 1978, and demanded that Dr. Navarro produce all

Presidential records which were in his "possession, custody, or control."  *See*

Complaint, ¶¶ 33-34, *United States v. Navarro*, 1:22-cv-22922 (D.D.C. Aug. 8,

2022) (ECF 1).  Although Dr. Navarro had stated that he would willingly produce

any presidential records in his control and that it was simply a matter of identifying

any presidential records, Dr. Navarro made clear through counsel that the

seemingly coordinated timeline between the DOJ's contact about the National

Archives and Records Administration's civil suit (July 1, 2022) and his criminal

indictment for contempt of congress based upon his assertion of executive

privilege to produce documents to the January 6 Subcommittee (July 2, 2022)

caused him concern that the United States was seeking to use an unrelated civil

statute to support the ongoing criminal investigation into Dr. Navarro in a manner

which would affect his penal interests and constitutional rights.  *See* Opp. Mot.

Summ. J., Exhibit A, *United States v. Navarro*, 22-cv-02292 (D.D.C. Oct. 21,

2022) (ECF 11-2).

On July 29, 2022, Dr. Navarro requested limited immunity based on the "act

of production privilege" for any presidential records which the National Archives

and Records Administration sought through the civil action, seeking either an

explicit bar of their usage in unrelated criminal proceedings or to delay their

production until after his ongoing criminal prosecution was concluded. *See id.*  Dr.

Navarro received no response to this request and, instead, on August 3, 2022, the

United States filed a complaint in the underlying action. *See generally* Complaint, United States v. Peter K. Navarro, 1:22-cv-02292, (D.D.C.) (ECF 001) (Aug. 3, 2022).

On September 26, 2022, the United States moved for Summary Judgment. Motion for Summary Judgment (Sep. 26, 2022) (ECF 007).  On October 11, 2022, Dr. Navarro Moved to Dismiss the Complaint on the basis that it failed to state a claim.  Dr. Navarro Motion to Dismiss (October 11, 2022) (ECF 9).  Dr. Navarro primarily noted that the United States filed a complaint which used an unrelated D.C. State statute outlining replevin of wrongfully withheld property and federal common law usage of replevin to compel presidential records that fell under the Presidential Records Act of 1978 as an effort to get around the statute's lack of a right of action which authorized the filing of any lawsuit to compel immediate production of presidential records.  *See* Motion to Dismiss, at 7-10.

On March 9, 2023, the district court granted summary judgment in favor of the United States and denied Dr. Navarro's motion to dismiss.  The district court ordered Dr. Navarro to produce previously identified presidential records, and for the parties to confer about a schedule of proceedings overseen by the district court to fulfill the order.  Order and Judgment, *United States v. Navarro*, No. 22-cv-02292 (D.D.C. Mar. 9, 2023) (ECF 15).  On March 23, 2023, Dr. Navarro filed a notice of appeal of the Court's March 9, 2023 Order.  Notice of Appeal, *United*

*States v. Peter K. Navarro*, No. 22-cv-02292 (D.D.C. Mar. 23, 2023) (ECF 019).

Dr. Navarro also filed a motion for stay pending appeal at the district court level,

which was denied.  Dr. Navarro then filed an emergency motion for stay pending

appeal with the Court of Appeals, which was also denied.  Once these stays were

denied, counsel for Dr. Navarro identified any presidential records in Dr.

Navarro's possession and produced them to the United States.

On May 31, 2023, the United States asserted, without support, that more

presidential records than those produced in response to the district court's order

existed in Dr. Navarro's personal electronic mail account.  Motion to Enforce

(May 31, 2023) (ECF 30).  Counsel for Dr. Navarro proposed that he could submit

to the district court a random sample of electronic mail that had been reviewed and

found to not be a presidential record.  Response to Motion to Enforce (June 1,

2023) (ECF 31).  In response to this filing, the district court ordered Dr. Navarro to

submit a random sample of materials not produced after review to the district

court, as well as to file under seal a notice with the district court detailing search

terms, accounts reviewed, metadata, etc. *See generally* Order (Aug. 31, 2023)

(ECF 032).  Dr. Navarro provided such information to the district court on October

16, 2023.  As of November 6, 2023, neither the United States nor the district court

have notified Dr. Navarro of any subsequent action that would be required in this

matter.

### III.    Relevant Law

### A.    Presidential Records Act

The Presidential Records Act of 1978, 44 U.S.C. §§ 2201-2209 ("PRA"),
governs the preservation and maintenance of official records of Presidents, Vice
Presidents, and their respective staffs.  The statute requires the President to ensure
the preservation of records documenting the performance of that President's
official duties to ensure that once the President's tenure in the White House is
concluded, custody and control of all presidential records can be transferred to the
National Archives and Records Administration ("NARA").  44 U.S.C. § 2203(a).
The PRA then requires NARA to prepare public access, "as rapidly and completely
as possible consistent with the provisions of this chapter."  44 U.S.C. § 2203(g)(1).

The PRA is unequivocal in that it gives the United States, "complete
ownership, possession, and control of Presidential records; and such records shall
be administered in accordance with the provisions of," the Act  44 U.S.C. § 2202.
Electronic mail can be documentary materials as defined by the Presidential
Records Act.  See 44 U.S.C. § 2201(1) (defining "documentary materials" pursuant
to the Presidential Records Act to include "electronic or mechanical recordation,
whether in analog, digital, or any other form.").  However, solely because
electronic mail was created during an employee's tenure in the White House does
not mean that all electronic mail created during an employee's tenure is a

presidential record.  *See* 44 U.S.C. § 2202(2)(A), (B) (defining "presidential records" as a specific category of documentary materials, and exempting certain documentary materials from the definition of "presidential records").

The PRA was amended in 2014 to address the specific issue of creating or sending a "Presidential or Vice Presidential record using a non-official electronic message account[.]"  44 U.S.C. § 2209.  This section outlines that such material that is created or sent on a personal electronic mail account must either: "(1) cop[y] an official electronic messaging account of the President, Vice President, or covered employee in the original creation or transmission of the Presidential record or Vice Presidential record; or (2) forward[] a complete copy of the Presidential or Vice Presidential record to an official electronic messaging account of the President, Vice President, or covered employee not later than 20 days after the original creation or transmission of the Presidential or Vice Presidential record."  44 U.S.C. § 2209(a)(1), (2).  Of note, this subsection states it only applies to material that is "create[d]" or "sen[t]," and not material that is "received."  *Compare* 44 U.S.C. § 2209, *with* 44 U.S.C. § 2201(2) (defining "presidential records" as "documentary materials. . . *created or received*[.]") (emphasis added).

The PRA does not provide a separate cause of action through which the United States may seek the return of Presidential records.  In fact, the only remedial measure within the Act is a section which authorizes adverse actions

when covered employees intentionally fail to abide by 44 U.S.C. § 2209(a).  *See* 44

U.S.C. § 2209(b).

### B.    Replevin

Generally, replevin is a common law cause action brought to recover goods

or chattel.  *See generally* REPLEVIN Definition & Legal Meaning, Black's Law

Diction, 2nd Ed. ("A personal action *ex delicto* brought to recover possession of

goods unlawfully taken, (generally, but not only, applicable to the taking of goods

distrained for rent,) the validity of which taking it is the mode of contesting, if the

party from whom the goods were taken wishes to have them back in specie[.]").

Specifically in the District of Columbia, replevin has been rarely used and often

reserved for actions in which, "recovery of possession of wrongfully taken

property and damages incidental to detention."  *Ellipso, Inc. v. Mann*, 541 F. Supp.

2d 365, 376 n. 5 (D.D.C. 2008) (citing *Wardman-Justice Motors v. Petrie*, 39 F.2d

512, 515 (D.C. Cir. 1930)).

The limited cases to interpret the District's replevin statute suggest that the

statute was intended to be narrowly construed rather than broadly applied.  *See*

*BMO Harris Bank N.A. v. Dist. Logistics, LLC*, 2021 U.S. Dist. LEXIS 255094 at

*7-8 (D.D.C. Jul. 23, 2021) (interpreting replevin as a cause of action, "brought to

recover personal property to which the plaintiff is entitled, that is alleged to have

been wrongfully taken by or to be in the possession of and wrongfully detained by

the defendant"). Specifically, "personal property" that is the subject of the statute has been narrowly construed. *See Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008) (denying a replevin claim to recover frequent flyer miles from an airline, because such miles were an intangible right and thus were not "personal property").

## IV.   Argument

The narrow question before the Court is whether the Presidential Records Act provides the United States with any vehicle by which to compel the production of Presidential records subject to the Act that are in the possession of a private citizen not otherwise affiliated with the government. The Act provides no such vehicle, because Congress did not intend for the United States to utilize the PRA as a sword as against those persons who become political opponents of a subsequent Presidential administration by virtue of their past service to a current Presidential candidate. *See Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021) ("We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast "economic and political significance."'" (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000) (*superseded by statute*))). Here, Dr. Navarro was one of the longest-tenured members of Donald J. Trump's Presidential administration, serving from January 20, 2017, through January 20,

13

2021, as the Director of the National Trade Council and as the Director of the

Office of Trade and Manufacturing coordinator in furtherance of the response by

the United States to the coronavirus pandemic.

### A. The United States Was Not Entitled to Judgement as a Matter of Law

This Court reviews a district court's grant of summary judgment de novo.

*See Mobley v. CIA*, 806 F.3d 568, 574 (D.C. Cir. 2015) (citing *Morley v. CIA*, 508

F.3d 1108, 1114 (D.C. Cir. 2007)).  A district court may only grant summary

judgment where, "the pleadings, the discovery and disclosure materials on file, and

any affidavits show that there is no genuine issue as to any material fact and that

the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see*

*also Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) ("Summary judgment

may be granted only where there is no genuine issue as to any material fact and the

moving party is entitled to a judgment as a matter of law.").  Summary judgment is

a, "drastic remedy [and] courts should grant it with caution so that no person will

be deprived of his or her day in court to prove a disputed material factual issue."

*Greenberg v. FDA*, 803 F.2d 1213, 1216 (D.C. Cir. 1986).

In summarily deciding this matter, the district court has read into the PRA a

much broader grant of authority than was intended by Congress.  Put differently, it

is beyond dispute that the PRA includes no cause of action for the United States to

seek the return of Presidential records.  In support of its position, the United States

relies upon Section 2209 of the PRA, which provides, in pertinent part:

> Disclosure requirement for official business conducted using non-official electronic messaging accounts. (a) In General.- The President, the Vice President, or a covered employee may not create or send a Presidential or Vice Presidential record using a non-official electronic message account unless the President, Vice President, or covered employee- (1) copies an official electronic messaging account of the President, Vice President, or covered employee in the original creation or transmission of the Presidential record or Vice Presidential record; or (2) forwards a complete copy of the Presidential or Vice Presidential record to an official electronic messaging account of the President, Vice President, or covered employee not later than 20 days after the original creation or transmission of the Presidential or Vice Presidential record.

44 U.S.C. § 2209(a).  Thus assuming, *arguendo*, that Dr. Navarro was in

possession of electronic mail that qualify as Presidential records, he was to have

copied or forwarded the same to an "electronic messaging account of the

President," within "20 days after the original creation or transmission" of the

record.  *Id.*  Thereafter, the *only*, action the PRA authorizes the United States to

take in response to a "covered employee's" failure to comply with the Act's

record-forwarding mandate, is to take an "adverse action" as against that

employee, including, but not limited to, termination.  *See* 44 U.S.C. § 2209(b).

Here, of course, termination or any other adverse employment action was

not available to the United States insofar as Dr. Navarro is no longer an employee

of the United States.  Accordingly, the United States does not dispute that the PRA

provides no remedial vehicle by which it may seek the return of the Presidential

15

records in the possession of a private citizen.  Rather, the United States filed suit under the District of Columbia's replevin statute, which provides a private cause of action for the, "recover[y] [of] personal property to which the plaintiff is entitled, that is alleged to have been wrongfully taken by or to be in the possession of and wrongfully detained by the defendant."  D.C. Code § 16-3701.

In support of the proposition that a replevin action is the appropriate means by which the United States can take possession of Presidential records in the possession of a private citizen, the United States relies on non-binding precedent involving a district court's denial of a motion to dismiss a replevin action brought by the United States against a private collector in possession of a map previously owned by President John F. Kennedy.  *See United States v. McElvenny*, 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Mar. 31, 2003).  In its denial of a motion to dismiss, the district court did not consider the propriety of relying on a replevin action for the return of Presidential records, instead considering only whether the map in question was the property of the United States.  *McElvenny*, 2003 U.S. Dist. LEXIS 4792, at *12 (S.D.N.Y. Mar. 31, 2003) (concluding that, "[t]he Deed is a valid instrument pursuant to which materials relating to the life and work of President Kennedy were donated to the United States and unless the evidence shows otherwise, the Deed applies to the Map and the Meredith Materials. The Government has therefore stated a claim upon which relief may be granted and the

16

Defendants' motion to dismiss is denied."). Indeed, the map in question was not even subject to the PRA, as President Kennedy's death preceded the passing of the PRA by almost fifteen years and the map's creation would have preceded the PRA by an even greater period of time.

Importantly, the district court's decision was reached eleven years before Congress amended the PRA to include § 2209, thus further limiting the persuasiveness of the district court's determination. In effect, the United States seeks to usurp the legislative prerogative of Congress by utilizing the statute of a Federal District to enforce the PRA for separated "covered employees" where the PRA itself does not otherwise provide any enforcement mechanism. The issue of whether a federal agency can use unrelated statutes to enact their purposes has recently been considered by the Supreme Court. In *Alabama Association of Realtors, et al vs. Department of Health and Human Services, et al*, the Supreme Court considered whether the Centers for Disease Control ("CDC") could rely upon a statute which granted them specific methods to curb the spread of the Covid-19 pandemic to administratively impose a moratorium on evictions in high-volume Covid-19 cities. 141 S. Ct. 2485 (2021). The Court found that Congress is typically expected to, "speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Id.* at 2489 (internal quotations omitted) (quoting *Utility Air Regulatory Group v. EPA*, 573 U. S. 302, 324, (2014)).

Ultimately, the Court held that, even if the underlying goal of the moratorium on eviction was "in pursuit of a desirable end," the CDC had exceeded the scope of its statutory authority by relying on a limited statute to impose a broad moratorium and that were Congress to have intended for a national moratorium, it would need to expressly authorize it rather than let the CDC infer such broad authority on its own. *Ala. Ass'n of Realtors*, 141 S. Ct. at 2490.

Moreover, it is improper to *assume* that Congress intended the United States to rely upon individual State replevin statutes to enforce the PRA. The Supreme Court has long held that, "courts should not lightly presume congressional intent to implicitly delegate decisions of major economic or political significance to agencies[,]" where a longstanding statute has never been used in such a way. *See Merck & Co., Inc. v. United States HHS*, 962 F.3d 531, 540 (D.C. Cir. 2020) (citing *Loving v. IRS*, 742 F.3d 1013, 1021 (D.C. Cir. 2014) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529, U.S. 120, 133 (2000), (*superseded by statute*)). *See also Utility Air Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014) ("When an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy, we typically greet its announcement with a measure of skepticism. We expect Congress to speak clearly if it wishes to assign an agency decisions of vast economic and political

significance") (internal citation omitted) (quoting *Brown & Williamson*, 529 U.S. at 159-60).

* * *

Never before has the United States of America sought the return of "Presidential records" from a former senior presidential advisor through a State replevin action.  It follows that Congress similarly did not foresee the United States Executive Branch reading authority into the PRA that was not explicitly bestowed. Accordingly, the district court's grant of summary judgment was improper and must be reversed.

## <u>CONCLUSION</u>

Based on the foregoing, the district court's decision must be reversed.

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34, Dr. Navarro respectfully submits that oral argument is necessary in this matter.  The district court's application of both the Presidential Records Act of 1978 and the D.C. replevin statute is a novel issue.  Further, the Court's ruling on this matter will create binding precedent that will affect future application of the Presidential Records Act and future proceedings enacted by the National Archives and Records Administration.

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 32(a)(7)(B), that the foregoing principal brief complies with the relevant page and type-volume limitations.  The brief is twenty (20) pages long, and thus not exceeding thirty (30) pages.  The brief contains 3535 words, and thus not more than 13,000 words, excluding those exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.



/s/
Stanley E. Woodward, Jr.

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on November 6, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/
Stanley E. Woodward, Jr.