ARGUMENT NOT YET SCHEDULED

APPEAL NO. 23-5062

---

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

UNITED STATES OF AMERICA, APPELLEE

v.

PETER K. NAVARRO, APPELLANT.

---

APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

---

# REPLY IN SUPPORT OF APPELLANT'S MOTION FOR STAY PENDING APPEAL

---

Stanley E. Woodward, Jr.
(D.C. Bar No. 997320)
BRAND WOODWARD LAW, LP
1808 Park Road NW
Washington, DC 20010
202-996-7447 (telephone)
202-996-0113 (facsimile)
Stanley@BrandWoodwardLaw.com

*Counsel for Appellant Peter K. Navarro*

1:22-cv-02292-CKK

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ....................................................................3

I. INTRODUCTION ....................................................................5

II. ARGUMENT ....................................................................7

*A. Appellant is Likely to Succeed on the Merits, or Has Made a Substantial Case on the Merits of a Novel Legal Issue*....................8

*B. Appellant is Likely to Suffer Irreparable Harm if Compelled to Provide the United States with Documents at Issue, Because He Has a Privilege Against Self-Incrimination and He is Subject to Multiple Government and Criminal Inquiries* ....................13

*C. A Stay Will Not Harm the United States nor Affect the Public Interest* ....................14

III. CONCLUSION ....................................................................16

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Ala. Ass'n of Realtors*, 141 S. Ct. 2485 (2022)....................................................12

*Alexander v. Sandoval*, 532 U.S. 275 (2001)........................................................12

*Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 904 F.3d 1014 (D.C. Cir. 2018) ..........................................................................................................13

*Comcast Corp. v. Natl'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020) ...............................................................................................................11

*Comm. On the Judiciary v. McGahn*, 407 F. Supp. 3d 35 (D.D.C. 2019)................................................................. 8

*Comm. on the Judiciary v. McGahn*, 973 F.3d 121 (D.C. Cir. 2020), *vacated by* 2021 U.S. App. LEXIS 20759 (D.C. Cir. Jul. 13, 2021)....................................12

*Cotton v. United States*, 52 U.S. 229 (1850)........................................................10

*Ficken v. AMR Corp.*, 578 F. Supp. 2d 134 (D.D.C. 2008)....................................10

*Fisher v. United States*, 425 U.S. 391 (1976) ........................................................14

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020)...........................................................11

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018) ...............................................12

*See Headspeth v. Mercedes-Benz Credit Corp.*, 709 A.2d 717 (D.C. 1998).............9

*United States v. McElvenny,* 2003 U.S. Dist. LEXIS 4792 (S.D.N.Y. Apr. 1, 2003) ...............................................................................................................................11

*United States v. Ponds*, 454 F.3d 313 (D.C. Cir. 2006)..... 14

*Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)............................12

*Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) ........................................................................... 8, 13

*Wis. Gas Co. v. FERC*, 758 F.2d 669 (D.C. Cir. 1985)..........................................13

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)................................................................12

## I. INTRODUCTION

In their response to Dr. Navarro's emergency motion to stay the proceedings at the lower court pending an appeal, the United States seeks on multiple fronts to have hold two opposite positions. The United States notes that they must act "consistent with the provisions of" the Presidential Records Act when retrieving and preserving records and acknowledges that the Presidential Records Act does not provide them with any sort of cause of action, but then simultaneously advances the position that the Presidential Records Act so clearly establishes that they can use replevin to recover any records as defined under the Presidential Records Act that any litigation beyond the forthwith production of the records is clearly an anathema of the legislative purpose of the Presidential Records Act. *See* United States' Opposition to Defendant's Emergency Motion for Stay, 6, 11 (Apr. 6, 2023) (Document #1993559) ("The Presidential Records Act requires that the Archivist of the United States- i.e. the National Archives and Records Administration (NARA)- must. . . make such records available to the public as rapidly and completely as possible consistent with the provisions of this chapter. . . Congress's decision not to create an independent cause of action to compel the production of Presidential records does not preclude the United States from availing itself of existing forms of legal recourse for the recovery of property." (internal quotation omitted)). The United States claims that Dr. Navarro has no sort

of privilege or criminal exposure because of the action they initiated in the lower court, while simultaneously asserting on multiple occasions that Dr. Navarro's mere possession of any Presidential Records Act records is the wrongful withholding of government property and evinces a willful disobedience of his requirements under the Presidential Records Act. *Compare* United States' Opposition to Defendant's Emergency Motion for Stay, 22-24 (Apr. 6, 2023) (Document #1993559) ("Navarro has also failed to show that the district court's order will imminently and irreparably injure him. . . The district court's order does not, in any event, implicate Navarro's Fifth Amendment rights."), *with id.* at 11, 15, and 26 n.6 (describing Dr. Navarro's actions as "wrongful[ly] withhold[ing]" government property and acknowledging ongoing "criminal proceedings and government inquiries" relating to Dr. Navarro). The United States asserts that longstanding precedent holding that a government agency discovering powers in a statute that has never been interpreted to include broad powers not written into the statute should be ignored in a case where the United States also admits that a federal agency is using the Presidential Records Act in such a way that has never been used before to affect the requirements of certain executive branch officials. *Compare* Combined Reply ISO Motion for Summary Judgment and Opposition to Defendant's Motion to Dismiss, p. 7, p. 7 n.4, (Oct. 4, 2022), *Navarro v. United States*, 2022-cv-02292 CKK, (ECF No. 013). ("That no court has yet had occasion

to interpret section 2209 [of the PRA] does not change the fact that it is the law, or that this Court is Competent to interpret it in the first instance. . . [j]urisprudence on the PRA is understandably sparse, as administrations have generally cooperated with White House lawyers, White House records professional, and the Archivist to ensure compliance with the PRA since its enactment."), *with* United States' Opposition to Defendant's Emergency Motion for Stay, p. 21 (Apr. 6, 2023) (Document #1993559) ("Navarro does not advance his argument through reliance on *Alabama Association of Realtors v. Department of Health & Human Services*. . . . here, no agency seeks to wield 'vast economic [or] political' powers.").

This Court, in the interest of justice and in reflection of the fact that Dr. Navarro has laid out a substantial case on the merits of a novel issue, should grant the emergency stay pending this court's appeal.

## II. ARGUMENT

Although the United States asserts otherwise, Dr. Navarro has met the substantial burden of establishing that this court should stay proceedings pending an appeal. First, Dr. Navarro has, at the very least, established a substantial case on the merits and that this matter is a novel issue that affects and seemingly is in discordance with longstanding Supreme Court precedent: the most recent case in a long line of cases, *Alabama Association of Realtors, et al vs. Department of Health and Human Services, et al*, 141 S. Ct. 2485 (2022), warns against implying broad

powers in statutes which have otherwise never been used in such a way. Further, Dr. Navarro has established that he is likely to suffer immediate and substantial harm, as he is subject to multiple government and criminal proceedings which any materials that are produced as a result of this matter will be publicly accessible and used against him if possible, which would violate the act-of-production privilege. Finally, neither the government nor the public interest will be harmed by the stay, as Dr. Navarro will preserve all materials which may be records as defined under the Presidential Records Act and produce them once the related inquiries are concluded, meaning that the United States's interests will actually be satisfied if the requested stay is granted.

### *A. Appellant is Likely to Succeed on the Merits, or Has Made a Substantial Case on the Merits of a Novel Legal Issue*

Ordinarily, the chance that a movant will succeed on the merits must be "substantial" in order to grant a stay pending appeal. *Comm. On the Judiciary v. McGahn*, 407 F. Supp. 3d 35, 38 (D.D.C. 2019); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). The party seeking a stay must, "raise[] questions going to the merits so serious, substantial, difficult[,] and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *McGahn*, 407 F. Supp. 3d at 38 (internal quotations omitted) (quoting *Holiday Tours, Inc.*, 559 F.2d at 844). However, where there is a novel legal issue, Courts will grant stays upon a showing of a

"substantial case on the merits," rather than requiring likely success upon the merits. *See Ctr. for Int'l Envtl. Law*, 240 Fed. Supp. 2d at 22-23 ("[A]lthough the Court ultimately did not agree with defendants' position on the merits, it is evident that defendants have made out a substantial case on the merits. . . [t]hat this Court's decision centered on a novel and admittedly difficult legal question weighs in favor of a stay." (internal quotations and citations omitted)). Appellant has, at least, outlined a substantial case on the merits.

While the United States now seeks to act as though this type of matter is straightforward, such a claim is not accurate. On top of the issues raised in the initial motion for stay, the United States's own position that the District of Columbia's replevin statute is so clear and unambiguous that it applies in this matter and provides an exact way to enforce the Presidential Records Act. However, such is not the case because the replevin statute is rarely even used in D.C.; in fact, the D.C. State Court system has only interpreted the replevin statute five times, with the most recent application in 1998. *See Headspeth v. Mercedes-Benz Credit Corp.*, 709 A.2d 717 (D.C. 1998). Further, the government cites in a footnote that personal property is clearly defined under the statute to be anything other than real property: however the D.C. statute does not define real property and the District Court for the District of Columbia has actually held that certain material other than real property are not property subject to replevin, casting doubt

on the claim that anything that is not real property can be recovered through replevin. *See also Ficken v. AMR Corp.*, 578 F. Supp. 2d 134, 143 (D.D.C. 2008) ("Here, the plaintiff's frequent flyer miles amounted to credit with the airline and . . . represented an intangible right that cannot be the subject of a conversion or trover claim under D.C. law. . . Because frequent flyer miles cannot be considered 'personal property,' the plaintiff's replevin claim also fails.").

The United States further seeks to cast doubt upon what specifically is the matter of first impression in this case, arguing that this case is merely a logical extension of *Cotton v. United States*, 52 U.S. 229, 232 (1850) whereby the Supreme Court held that the United States, "may bring suits to enforce their contracts and protect their property, in the State courts, or in their own tribunals administering the same laws. As an owner of property in almost every State of the Union, they have the same right to have it protected by the local laws that other persons have." *See* United States' Opposition to Defendant's Emergency Motion for Stay, 16-17 (Apr. 6, 2023) (Document #1993559). The United States then points to distinguishable cases from other jurisdictions where replevin was used, primarily highlighting cases where the United States filed replevin actions to recover production materials that the United States provided to defense contractors that the contractors sought to retain after the contracts with the United States were terminated. *See* United States' Opposition to Defendant's Emergency Motion for

Stay, 17 (Apr. 6, 2023) (Document #1993559). The United States then seeks to cast aspersions on the distinguishability of *United States v. McElvenny* by including it with those other cases and conclusively asserting that because the government filed a complaint for replevin in *McElvenny*, that replevin should clearly apply here as well. *See* United States' Opposition to Defendant's Emergency Motion for Stay, 17 (Apr. 6, 2023) (Document #1993559). However, as stated in the initial motion, *McElvenny* is wholly distinguishable: it is a case which came down to the terms of President Kennedy's will for the recovery of materials whose creation predate the Presidential Records Act and the case itself predates 44 U.S.C. § 2209 of the Presidential Records Act upon which the United States bases their claim that replevin can be used to recover electronic mail.

The United States then seeks to rely upon these positions to try and reframe this issue as one of a simple property dispute. *See* United States' Opposition to Defendant's Emergency Motion for Stay, 18-20 (Apr. 6, 2023) (Document #1993559). This is nothing more than a clear attempt to avoid the longstanding precedent which states that courts must be skeptical when the United States (or agencies of the government) finds an implied cause of action in long-existing statute that has never been used in such a way. *See, e.g., Comcast Corp. v. Natl'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020); *Hernandez v. Mesa*, 140 S. Ct. 735, 741-43 (2020); *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386,

1402 (2018); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017); *Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001). Thus, when this Circuit was confronted with the question of whether Congress had authorized the U.S. House of Representatives to utilize the Federal Courts to enforce its subpoenas, it concluded that Congress had not. *Comm. on the Judiciary v. McGahn*, 973 F.3d 121, 123 (D.C. Cir. 2020), *vacated by* 2021 U.S. App. LEXIS 20759 (D.C. Cir. Jul. 13, 2021) ("When a party seeks to assert an implied cause of action under the Constitution itself, . . . separation-of-powers principles are or should be central to the analysis, and usually Congress should decide whether to authorize a lawsuit." (internal quotations omitted)). Put simply, as the Supreme Court recently admonished, "[w]e expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast economic and political significance.'" *Ala. Ass'n of Realtors v. HHS,* 141 S. Ct. 2485, 2489 (2022) (quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)). The United States should not be able to merely conclusively state that, because the Presidential Records Act does establish recording standards for certain records, that the United States can clearly use the long-existing federal statute to authorize the use of an unrelated state statute to compel forced production of materials that may otherwise be used against a former government employee even though the statute includes no such section and has never been interpreted to include such a broad power.

*B. Appellant is Likely to Suffer Irreparable Harm if Compelled to Provide the United States with Documents at Issue, Because He Has a Privilege Against Self-Incrimination and He is Subject to Multiple Government and Criminal Inquiries*

The second factor requires that irreparable harm is, "both certain and great . . . and actual [rather than] theoretical." *Citizens for Responsibility & Ethics v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (internal quotations omitted) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Further, the movant must, "substantiate that irreparable injury is likely to occur." *Wis. Gas Co.*, 758 F.d at 674 (citing *Holiday Tours, Inc.*, 559 F.2d at 843 n.3). The United States seeks to claim that this action does not affect his Fifth Amendment rights, seeking both to claim that Dr. Navarro must explain exactly how such documents will tend to incriminate him and that the records do not meet the act of production privilege protection because the documents were voluntarily created and because the United States knows of their existence. *See* United States' Opposition to Defendant's Emergency Motion for Stay, 22-23 (Apr. 6, 2023) (Document #1993559). Ultimately however, the issue remains that the government admits that it discovered the existence of some records because of an unrelated congressional inquiry into Dr. Navarro's time in the White House and now seeks to compel the production of such documents. Complaint ¶¶ 27-28 ("Through the Subcommittee [on the Coronavirus Crisis]'s work, NARA became aware of Mr. Navarro's use of a non-official email account to send and receive

presidential records."). Such a situation is the exact type of situation anticipated by act-of-production privilege line of cases. *See United States v. Ponds*, 454 F.3d 313, 323 (D.C. Cir. 2006) ("[T]o determine whether an act of production implicates the Fifth Amendment, the court looks only to the communicative aspects of the act of production itself and whether those tacit averments as to the existence and location of the documents add anything significant 'to the sum total of the Government's information." (quoting *Fisher v. United States*, 425 U.S. 391, 411 (1976)). This further demonstrates the exact logic justifying Dr. Navarro's fear of incrimination, as this action for records was filed because of an unrelated congressional inquiry and now nothing will prevent the United States from using any documents produced in this matter in the unrelated ongoing criminal proceeding against him.

### *C. A Stay Will Not Harm the United States nor Affect the Public Interest*

In cases where the party opposing the stay is the United States, the last two factors, "the harm to the opposing party and weighing the public interest[,] . . . merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

The United States seeks to portray these factors as clearly in their favor by noting that the Presidential Records Act is meant to ensure the preservation and publication of presidential records, and then arguing that Dr. Navarro has in the past "stymied" the Archivist's efforts to safeguard presidential records, and now

any delay impliedly shows he is a risk of otherwise destroying records in his possession; the United States also seeks to portray his current actions, which solely are taken to protect his privilege against incrimination, as a sign of unwillingness to ever return the documents. *See* United States' Opposition to Defendant's Emergency Motion for Stay, 25-26 (Apr. 6, 2023) (Document #1993559). However, Dr. Navarro has from the outset notified the government that he would turn over any records in his possession once he either received immunity which would prevent the government from using such documents against him in unrelated actions, or until after his unrelated inquiries have closed and thus cannot be used against him. *See generally* Defendant Peter K Navarro's Opposition to the United States' Motion for Summary Judgment, Ex. A, *United States of America v. Peter K. Navarro*, 2022-cv-02292-CKK (Oct. 21, 2022) (ECF 011) ("Accordingly, in advance of any production of materials responsive to your request, we ask that the Department of Justice provide Mr. Navarro with act-of-production immunity with respect to any such production. We reiterate our willingness to work with you to ensure Mr. Navarro's compliance with the Presidential Records Act, and we appreciate your prior assistance in providing search parameters to better target relevant information. We also against [*sic*] confirm that we have forensically preserved Mr. Navarro's records, and they will be available for production when we receive assurances from the government that any such production does not

infringe on his fundamental Constitutional procedural rights.”). Ultimately, there is no harm to the United States's or the public's interests, as any records in Dr. Navarro's possession will not be destroyed and will ultimately be produced to the United States, at the very latest, once the potential for use to Dr. Navarro's harm has passed. To that end, counsel for Dr. Navarro has already agreed to terms for the search and production of records in Dr. Navarro's possession in the event that this Court does not grant this motion to stay proceedings pending appeal, so any claim that the records will never be provided is completely unfounded and therefore the risk of harm to the United States and the public is entirely nonexistent.

## III. CONCLUSION

For all of the foregoing and in support of his March 30, 2023 Motion for Stay Pending Appeal, Appellant respectfully requests this Court grant a stay of the District Court's March 9, 2023 Order so as to permit Appellant to appeal this novel legal matter.

**CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Fed. R. App. P. 32(g) and Fed. R. App. P. 32(a)(7)(B), that the foregoing brief complies with the type-volume limitation because it contains 2,944 words and thus not more than 13,000 words, excluding those exempted by Fed. R. App. P. 32(f) and D.C. Cir. Rule 32(e)(1). I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typeface style requirements of Fed. R. App. P. 32(a)(6) because the brief was prepared in 14-point Times New Roman font using Microsoft Word.

/s/
Stanley Woodward Jr.

**CERTIFICATE OF SERVICE**

I hereby certify, pursuant to Fed. R. App. P. 25(c), that on April 10, 2023, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

/s/
Stanley Woodward Jr.